555 F.2d 778
 NATIONAL AVIATION UNDERWRITERS, INC., a Missouri
Corporation, Manager and Attorney-in-Fact for
National Insurance Underwriters, a
Reciprocal Exchange, Plaintiff-Appellant,
v.
ALTUS FLYING SERVICE, INC., a corporation, Orbrey O. Owens,
an Individual, Major Woody R. Baker, Jr., an Individual,
Buddy C. Patterson, an Individual, V. Wendell Dockum, an
Individual, Dorothy Bostdorf, Individually and as next
friend of Christopher Charles Bostdorf, a minor, and as
personal representative of Marlin Bostdorf, Deceased,
Elizabeth Rick, Individually, and as personal representative
and next kin of Richard E. Capps, Defendants-Appellees.
 No. 75-1656.
 United States Court of Appeals,
Tenth Circuit.
 May 16, 1977.
 
 D. C. Johnston, Jr., Oklahoma City, Okl. (Dean G. Constantine, Oklahoma City, Okl., on the brief), for National Aviation Underwriters, Inc., plaintiff-appellant.
 Larry M. Weber, Altus, Okl. (Stansell E. Whiteside, Altus, Okl. and Ronald R. Hudson and Page Dobson, Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, Okl., were on the brief), for defendants-appellees, Altus Flying Service, Inc., Buddy C. Patterson, Orbrey O. Owens and V. Wendell Dockum.
 John J. Clayton, San Antonio, Tex., for defendant-appellee, Dorothy Bostdorf, individually and as next friend of Christopher Bostdorf, a minor.
 Before SETH and HOLLOWAY, Circuit Judges, and STANLEY, Senior District Judge.*
 HOLLOWAY, Circuit Judge.
 
 
 1
 This declaratory judgment suit was brought by National Aviation Underwriters, Inc. (National) for a determination that National owes no obligation to the insureds (defendants Altus Flying Service, Inc., Buddy C. Patterson, V. Wendell Dockum and Orbrey O. Owens) under the liability and hull damage provisions of a 1972 aviation policy issued by National.[1] The suit joined these insureds and additional parties as defendants, including the personal representatives of passengers Marlin Bostdorf and Richard Capps who were killed in a 1974 crash of a charter plane operated by Altus Flying Service (Altus).[2]
 
 
 2
 The tragedy occurred while defendant Owens was piloting a Piper Navajo twin engine plane on a charter flight from the Dallas-Ft. Worth Regional Airport to the Altus, Oklahoma, municipal airport. On the approach to the Altus airport the aircraft crashed and Owens and one passenger were injured and passengers Marlin Bostdorf and Richard Capps were killed.
 
 
 3
 National denied coverage under its policy on the ground that the pilot, Owens, did not have the flying hours required by the policy. National's policy contained the following policy provisions as Item 7 of the policy declarations (R. I, 9)[3]:
 
 
 4
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 5
 The aircraft involved was a Piper Navajo, Model PA-31, bearing FAA registration No. N979L. It was powered by two Avco-Lycoming Engines, each having 310 rated horsepower, or a total 620 horsepower. It is National's position that this made the last line of the requirements cited above applicable. Under Item 7 it was provided that insurance is afforded, inter alia, in flight only while the aircraft is being operated by a pilot having an FAA pilot certificate and rating at least equal to that specified for the aircraft use and type, and while properly rated and qualified for the flight and the aircraft being operated, and "when having (b) Pilot Experience at least equal to that specified below for the aircraft use and type." Further, the provisions on "Pilot Experience" for "Multi-engine, 600 Total H.P. & Over," below the heading "Total Hours," stated "3000"; under "Hours in same Type Aircraft" it stated "500"; and under "Hours Dual Checkout" it stated "10."
 
 
 6
 The defendant insureds filed a motion for summary judgment, which the court considered together with depositions, affidavits and a response to the motion. A declaratory judgment in favor of the defendants was entered stating there was no genuine issue as to any material fact, that the policy issued by National to the defendant insureds was in full force and effect on or about October 24, 1974, and that it covered the aircraft bearing FAA registration N979L piloted by Owens which crashed while on a flight between Lawton and Altus, Oklahoma, near Blair, Oklahoma. Later the court filed a memorandum opinion[4] expressing the reasons for the ruling, which essentially were: that there were ambiguities and undefined terms in the policy, such as "Pilot Experience;" that the policy had to be construed in favor of the insured under Oklahoma law;[5] that the hours requirements of the policy were met by Owens; and that the evidence established that he had substantial pilot experience and other qualifications sufficient to satisfy the requirements of the policy.
 
 
 7
 On appeal, National argues that the district court erred in that there were controverted material issues of fact, as to the pilot's experience; that finding an ambiguity in the policy did not make summary judgment proper or negate the existence of fact questions; and that the terms, such as "hours," had only one meaning in the aviation industry a meaning under which Owens did not qualify.
 
 
 8
 * The main controversy is whether Owens met the requirements for pilot experience in terms of 3,000 "Total Hours," 500 "Hours in Same Type Aircraft," and 10 "Hours Dual Checkout" and whether there was a genuine issue of fact in this respect so as to preclude summary judgment.
 
 
 9
 We first focus on the district court's basis for the ruling. In the memorandum opinion following the declaratory judgment (S.R. I, 18-23), the court essentially said that the term "Pilot Experience" was not defined by the policy; that in the absence of a specific definition the term must be construed to include all experience of the pilot which increases his aeronautical skill and knowledge, including schools, specialized training and experience; that the term was broad enough to include all flying time and time during which the pilot was the sole manipulator of the flight controls of large military aircraft, whether or not it was logged or loggable. The court further pointed out that the words "Pilot Experience" were followed by "at least equal to . . ." and were clearly "qualitative."
 
 
 10
 In dealing with the critical requirements on "hours" the court concluded (S.R. I, 22-23):
 
 
 11
 The policy does not state how the experience or "Total Hours" requirement of the policy may be satisfied. In the absence of specific policy provisions, satisfaction of the hour requirements of the policy is not limited by F.A.A. regulations, logged or loggable time, and may include all time during which the pilot manipulated the flight controls of an airplane. The reasoning and rationale of Republic Aero v. North American Underwriters, 462 S.W.2d 635, seems applicable here. (Emphasis added)
 
 
 12
 The Court finds and concludes[6] that the pilot Owens, has sufficient pilot experience to satisfy the requirements of the policy. The policy does not require that a pilot be able to prove his hours of pilot experience by documented evidence. He had substantial experience which is some respects is not commonly found. It includes twenty (20) years with the United States Air Force during which he logged 10,000.5 hours as a certified flight engineer and instructor flight engineer. Also, he holds a Commercial Pilot Certificate with single and multi-engine land and instrument ratings. He is a certified flight instructor in both single and multi-engine aircraft. On the date of the accident he had in excess of 1800 total logged or documented hours in civilian aircraft, and in excess of 900 logged or documented hours of multi-engine time in civilian general aviation as well as 1,100 hours as sole manipulator of the flight controls of large military aircraft and 800 to 1000 hours non-logged civilian time which includes 350 to 400 multi-engine hours. This meets the requirements of the policy even if the flight engineer time is disregarded.
 
 
 13
 Judgment has been entered accordingly.
 
 
 14
 We must determine whether the pleadings, depositions, affidavits and other papers showed that there was no genuine issue as to any material fact and that the defendants were entitled to this judgment as a matter of law. Rule 56, F.R.Civ.P. Under the rules which we must apply, we cannot agree that this record supports the summary judgment.
 
 
 15
 The critical point is the number of hours which Owens had constituting "Pilot Experience." The district court said that "Pilot Experience" was not defined in the policy and should not be construed in a strict fashion as suggested by National.[7] We agree that we should not apply a special meaning used by the underwriter and not known generally in the aviation business. However, in the policy declaration in Item 7 on "Pilots" there are detailed provisions on "Total Hours," "Hours in Same Type Aircraft," and "Hours Dual Control," which cannot be ignored. While the district court's views are not entirely clear to us, it appears that in fact the memorandum opinion recognized that there had to be "satisfaction of the hour requirements . . ." of the policy. The hours provisions seem pointed enough and must be applied since each term of the insurance contract should be given effect, if reasonably practicable. Board of Regents of Oklahoma Colleges v. Walter Nashert & Sons, Inc., 456 P.2d 524, 526 (Okl.); Metropolitan Life Ins. Co. v. Fisher, 382 P.2d 434, 438 (Okl.).[8]
 
 
 16
 The proper construction of these hours provisions is of paramount importance. Generally such terms of an insurance policy must be considered not in a technical but in a popular sense, and they should be construed according to their plain, ordinary and accepted use in common speech, unless it affirmatively appears that a different meaning was intended. Webb v. Allstate Life Insurance Co., 536 F.2d 336, 339 (10th Cir.). However while the terms in question do not seem esoteric, there is some evidence in our record that there are usages of the terms in the aviation business which differ from the meaning used by the district court,[9] and some contradictory evidence for the insureds on the meaning of these terms in the aviation business.
 
 
 17
 Where there is such business usage, the "(t)echnical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." 15 O.S.1971 § 161; Cities Service Oil Co. v. Geolograph Co., 208 Okl. 179, 254 P.2d 775, 780. We feel the record presented an issue on the meaning of the hours provisions as understood by persons in the business, an issue barring summary judgment and necessitating a trial.
 
 
 18
 The district court said that in light of the policy language, defendants could reasonably have concluded that the pilot was qualified and covered for the aircraft and flight and that the ambiguous language in the policy estops National from denying coverage (Memorandum Opinion, S.R. I, 20). We cannot agree that such ambiguity in the policy provisions served as an estoppel basis for this summary judgment.[10] At this point, the uncertainty that appears from the summary judgment record is instead one concerning the meaning of the hours provisions as used in the aviation business.[11] We are convinced that this called, not for a summary judgment, but, for a trial where proof on the issue could be developed. From the proof it can be decided whether there is a business usage of the terms by those in the aviation business like Altus and, if so, that usage should be applied.
 
 
 19
 Further, there were fact disputes raised as to the number of hours accrued by the pilot, Owens, in whatever capacity he was functioning in flight. Owens did maintain in his deposition that he had the required "Total Hours," "Hours in Same Type Aircraft," and "Hours Dual Checkout." However, the affidavit of an investigator, Mr. Coogan, employed by National related an earlier conflicting statement by Owens that he had about 1800 total hours instead of the specified 3,000.[12] There were other contradictions as well concerning the hours of Owens's flight experience.[13] Of course, we express no view as to whether the pilot's claims were accurate and indicate in no way how the question of pilot experience and coverage should be decided. Nevertheless, the detractions and contradictions must be considered in deciding whether a summary judgment was proper.
 
 
 20
 The court must view the summary judgment papers in the light most favorable to the party opposing the motion. Webb v. Allstate Life Insurance Co., supra, 536 F.2d at 339-40. We must consider factual inferences tending to show triable issues in the light most favorable to the existence of such issues and summary judgment must be denied unless the movant demonstrates his entitlement to it beyond a reasonable doubt. Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 516 F.2d 33, 36 (10th Cir.). Affidavits are not a substitute for trial and summary judgment is improper where an issue turns on credibility as it did here. Eagle v. Louisiana Southern Life Ins. Co., 464 F.2d 607, 608 (10th Cir.); Riggs v. British Commonwealth Corp., 459 F.2d 449, 451 (10th Cir.). And it is particularly wrong to base a summary judgment on the deposition of an interested party on facts, like much of the pilot's experience,[14] known only to him a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony. See Subin v. Goldsmith, 224 F.2d 753, 758-59 (2d Cir.), cert. denied, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779.
 
 
 21
 For these reasons we are convinced that the summary disposition prevented necessary examination of conflicting testimony and credibility in the crucible of a trial.[15] The case was clearly not one for summary judgment.
 
 II
 
 22
 The remaining defendants who are claimants against Altus and the other insureds present a separate proposition in support of the summary judgment. They say that regardless of what ruling is made as to the insureds, the declaratory judgment against National should be sustained as to them because of the requirement of liability insurance for protection of the public using air taxi service. They point to the economic regulations of the Civil Aeronautics Board, citing Subpart D on liability insurance requirements, particularly 14 C.F.R. § 298.41 (1972), and cases rejecting policy defenses where insurance is required for the protection of the public, such as Royal Indemnity Co. v. Olmstead, 193 F.2d 451 (9th Cir.).
 
 
 23
 Without reaching the merits of this theory we must agree with National that the regulations themselves do not support the argument. 14 C.F.R. § 298.44 (1972) authorized certain exclusions from policy coverage in the air taxi operator's liability policy, including the following exclusions of losses specified in § 298.44(i):
 
 
 24
 . . . (i) Any loss arising from operation of an aircraft (1) without a copilot, if one is required under the policy of insurance or (2) by a pilot (or pilot and copilot) not named in or meeting the qualification, experience, and currency requirements provided in the policy of insurance. (Emphasis added).
 
 
 25
 We are satisfied that in any event the exclusion of coverage relied on by National did not contravene the regulations.
 
 III
 
 26
 There remains one further matter. Following the entry of the declaratory judgment against National the court entered a judgment for further relief[16] including damages for loss of the aircraft, expenses in defending a damage suit by third parties against Altus, and attorney's fees in defending that damage suit and the instant case. Since the same policy exclusion on pilot experience which we have been discussing also appears to bar such additional recovery, the judgment for damages must also be set aside. Reconsideration may be given to the damage claims after the coverage issue is decided by trial.
 
 
 27
 Accordingly, the declaratory judgment and the subsequent journal entry of judgment entered against National are vacated and the cause is remanded for further proceedings as provided herein.
 
 
 
 *
 Of the District Court of Kansas, sitting by designation
 
 
 [1]
 A binder was issued by the company effective September 19, 1972, and the policy itself as issued was effective September 20, 1972
 
 
 [2]
 Defendant Dorothy Bostdorf was named individually and as next friend of a minor, Christopher Charles Bostdorf, and a personal representative of Marlin Bostdorf, deceased. Defendant Elizabeth Rick was named individually and as personal representative and next kin of Richard E. Capps, deceased
 
 
 [3]
 There are two series of record volumes. The first set will be cited as "R. I," etc., and the supplemental set of record volumes will be cited as "S.R. I," etc
 
 
 [4]
 There were further proceedings in the case leading to a judgment for additional relief by way of damages. See Part III, infra
 
 
 [5]
 It is common ground that Oklahoma substantive law applies generally in this diversity suit, although there is one area of federal law implicated, as discussed in Part II, infra
 
 
 [6]
 Of course, we are not dealing with findings of fact made after an adversary trial and the clearly erroneous test does not apply as to these factual statements based on the summary judgment papers. Williams v. Eaton, 443 F.2d 422, 433 (10th Cir.)
 
 
 [7]
 The memorandum opinion pointed to the position taken by Mr. Potchen, an officer of National, that "Pilot Experience" had only one meaning pilot flying hours and that "Pilot Experience" means only hours which were logged or loggable under F.A.A. regulations as either a pilot in command, second in command or hours in dual instruction
 We agree that it is the insurance policy and not the F.A.A. regulations which determine the coverage, Ranger Insurance Co. v. Culberson, 454 F.2d 857, 861 (5th Cir.), cert. denied, 407 U.S. 916, 92 S.Ct. 2440, 32 L.Ed.2d 691 and believe that the policy provisions should be construed as used by those in the aviation business such as Altus was engaged in. As discussed below, we feel the real problem is one of usage of the terms in the business which will require evidence at trial.
 
 
 [8]
 We have considered National Ins. Underwriters v. King Craft Custom Products, Inc., 368 F.Supp. 476 (N.D.Ala.), aff'd 488 F.2d 1393 (5th Cir.), relied on by the insureds. The case does reject a defense, after submission of the issue to the Court, that the pilot did not have the required 550 total hours. The court reasoned that the hours provisions were only representations or warranties concerning the particular pilot, that the proof showed that this was immaterial to acceptance of the risk, and that the coverage applied. Id. at 479-80. Such facts are not developed in this summary judgment record. On this record, we cannot agree that the hours provisions can now be held satisfied as a matter of law
 
 
 [9]
 The affidavit of Mr. McDonough states that in the view of an underwriter and persons in the aviation industry, pilot experience and pilot hours consist of hours permitted by the FAA to be logged, or loggable as pilot in command, co-pilot or second in command, or hours in an instrument simulator permitted by the FAA to be logged or loggable as pilot hours. (R. I, 338-39); see also Potchen Deposition, (R. III, 114-15), Mr. Patterson's affidavit took a contrary view, which the district court essentially accepted. (R. I, 218-19)
 While we do not feel the FAA regulations are controlling on coverage, Ranger Ins. Co. v. Culberson, supra, 454 F.2d at 861, the proof may show that definitions of a supervising agency are accepted as industry terminology. See Commercial Ins. Co. of Newark v. Gonzalez, 512 F.2d 1307, 1310, 1313 (1st Cir.), cert. denied, 423 U.S. 838, 96 S.Ct. 65, 46 L.Ed.2d 57. In any event, we feel that a fact issue on industry usage was raised.
 
 
 [10]
 There was a further estoppel theory urged by the insureds based on alleged representations by National. In this record the only substantial evidentiary basis for an estoppel against National would be premised on representations claimed by Mr. Buddy Patterson, president of Altus, in his affidavit to the effect that National's agent, Mr. Towler, represented that multi-engine hours could be satisfied by operation of any multi-engine aircraft. (R. I, 217-18). However, this was directly contradicted by National's agent, Mr. Towler, (R. I, 266), raising a fact question and barring summary judgment on this point
 
 
 [11]
 We do not, of course, rule out the possibility that ambiguities in other provisions may appear as the issues develop for trial. This opinion should not be viewed as holding that the policy has no ambiguous provisions relating to this controversy
 
 
 [12]
 In an interview with Owens conducted on October 26, 1974, two days after the plane crash, Coogan states by affidavit that Owens claimed to possess approximately 1800 hours of total pilot flying time. Further, 40 to 50 hours of this total was comprised of flight in multi-engine aircraft with horsepower in excess of 600. (R. I, 328). During a subsequent interview conducted by Coogan, held November 7, 1974, Owens's testimony differed from his earlier version in that: he then claimed an additional estimated 800 to 1000 unlogged civilian flight hours; he increased his earlier multi-engine 600 horsepower flight-time estimate from approximately 40-50 hours to approximately 102 hours; he included a previously unmentioned 400-600 hours during which he sat in the co-pilot's seat while a flight engineer in the United States Air Force (R. I, 329)
 When questioned concerning these inconsistencies, Owens stated that he had been heavily sedated during the first interview and, in any event, he was merely supplying general estimates until he could refresh his memory by reviewing his log books and other documents. (R. IV, 60-65; 82).
 
 
 [13]
 During a deposition after commencement of this suit, Owens's estimate as to the 400 to 600 hours he sat in the co-pilot's seat while on Air Force flights as a flight engineer, was again revised and increased to approximately 1000 or 1100 hours. (R. IV, 130). Additionally, his estimate of "total flight hours" to the time of the accident was changed from 1800 hours (see note 10, supra ) to "between 3000 and 3500 hours." (R. IV, 130). Further, Owens's multi-engine flight time (horsepower rating unstated) was again raised from approximately 102 hours (see note 10, supra ) to "between 900 and 950 hours of logged or loggable multi-engine time," (aside from hours claimed to have been accrued in military flights) (R. IV, 57-59)
 Further, Owens admitted that his information was inexact as to his unlogged time in civilian airplanes and in distinguishing how much time was multi-engine or single-engine. (R. IV, 53).
 
 
 [14]
 We have noted that the district court relied in part on time when Owens was the sole manipulator of the flight controls of large military aircraft. During his deposition Owens frequently was unable to give a lead to the whereabouts of the pilots on these military planes because he had not seen them for many years. See R. IV, 41, 43-44; 66-67. In addition, as to a substantial amount of the unlogged civilian flying hours there were no records and the claim of these hours rests essentially on Owens's testimony. See R. IV, 53
 
 
 [15]
 We note that the parties had waived a jury. However, as the court pointed out in Colby v. Klune, 178 F.2d 872, 874 (2d Cir.):
 Nor is the situation different because the trial will be before a trial judge without a jury. For how can the judge know, previous to trial, from reading paper testimony, what he will think of the testimony if and when, at a trial, he sees and hears the witnesses?
 
 
 [16]
 See 28 U.S.C. § 2202