**TRANSPORT INSURANCE COMPANY, Plaintiff,**

v.

**LEE WAY MOTOR FREIGHT, INC., Defendant.**

Civ. A. No. 3–78–0306–H.

United States District Court,
N. D. Texas,
Dallas Division.

April 24, 1980.

John L. Lancaster, III, D. Paul Dalton Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for plaintiff.

James D. Foliart, Glen D. Huff, Foliart, Mills & Niemeyer, Oklahoma City, Okl., Royal H. Brin, John H. Hall, Strasburger & Price, Dallas, Tex., for defendant.

## OPINION AND ORDER

SANDERS, District Judge.

Plaintiff Transport Insurance Company ("Transport") sues its insured, Defendant Lee Way Motor Freight, Inc. ("Lee Way"), for declaratory judgment pursuant to Title 28, United States Code § 2201 in order to determine the extent of Transport's liability under excess umbrella insurance policies that provide coverage for damages that Lee Way must pay on account of discrimination.

In a previous suit, *United States v. Lee Way*, Lee Way was found to have engaged in a pattern and practice of race discrimination and ordered to pay over $1.8 million in damages to individual discriminatees. In the present case Transport asks this Court to determine (1) whether the liability imposed upon Lee Way in the previous suit resulted from a single occurrence, a separate occurrence as to each of the four terminal locations involved, or a separate occurrence as to each of the individual discriminatees, (2) whether certain back-pay awards imposed upon Lee Way fell within or outside of the applicable policy coverages, and (3) whether (and how) Lee Way's costs of defending the discrimination suit should be apportioned between transport and Lee Way.

The Court finds and concludes (1) that the pattern and practice of discrimination found by the court in *United States v. Lee Way* constitutes "one occurrence" as that term is used in the insurance policies; (2) that back pay for the period prior to the inception of the policies on January 1, 1967, is not covered by the policies but back pay for all discriminatees after January 1, 1967, is within the policy coverage; and (3) that Lee Way's defense costs in *United States v. Lee Way* are fully reimbursable and should not be apportioned.

### I. Background

#### A. United States v. Lee Way

In June of 1972, the United States filed suit against Lee Way and two labor unions, alleging that they had engaged in and were engaging in a pattern and practice of discrimination in employment. *United States v. Lee Way Motor Freight, Inc., et al.,* W.D. Okla., Civil Action No. 72–445. Following several months of trial, the district court issued its findings and conclusions December 27, 1973, in which it found and concluded that Lee Way had engaged in a pattern and practice of employment discrimination. The court determined that Lee Way had discriminated on the grounds of race in its hiring practices and in its promotion and transfer policies, all of which operated to restrict black employees to the poorest paying and least desirable jobs.[1] The court noted that certain practices, although neutral on their face, operated to freeze the status quo of prior discriminatory practices and thus could not be lawfully maintained.

After referring the case to a special master for determination of individual entitlement to relief, the trial court entered its final judgment October 11, 1977, wherein it ordered Lee Way to pay the sum of $1,818,-191.33 as damages in the form of forty-seven individual back-pay awards, ranging

---

1. The Court found that Lee Way discriminated against blacks in hiring and job placement and specifically found that Lee Way's no-transfer policy which was neutral in its face operated discriminatorily. (Findings 34–37 and Conclusions 9–11). It was company policy that no employee would transfer between job classifications covered by different bargaining units. The policy's effect "froze" blacks into menial and lower-paying positions. which they tradi-

tionally had held and prevented placement in more desirable higher-paying jobs. Even though this policy had been found to be unlawful in *Jones v. Lee Way Motor Freight, Inc.,* 431 F.2d 245 (10th Cir. 1970), Lee Way had continued to enforce a similar policy which provided that anyone who transferred could not carry over his seniority for bidding and lay-off purposes. It, too, was found to be unlawful by the district court (Conclusion 10).

from $3,000 to $138,000. The judgment was appealed, and in September 1979, the Tenth Circuit Court of Appeals affirmed the district court's judgment but remanded the case for consideration of additional damages.

### B. The Insurance Policies

For many years prior to the filing of *United States v. Lee Way*, Lee Way had purchased all its insurance coverage from Transport. In January 1967, Lee Way purchased from Transport additional insurance in the form of a series of eight excess umbrella insurance policies which afforded substantially higher limits of liability and broader coverages than the underlying Transport policies. This excess umbrella coverage (in the form of annually renewed policies) was in effect from January 1, 1967, through early 1978. The first five policies (those in effect from January 1, 1967, until mid-1972) expressly provided coverage for discrimination. However, in late August or early September 1972, Transport rewrote the umbrella policy then in effect with an endorsement excluding any future coverage for discrimination. Consequently, in this action the Court is only concerned with the five umbrella policies which were in effect from January 1, 1967, through late August or early September, 1972.

The parties have stipulated that a specimen policy (admitted into evidence) contains the language relevant to all the policies in question. The general coverage provision says that Transport will indemnify Lee Way

> "for all sums which [Lee Way] shall be obligated to pay by reason of the liability imposed upon [Lee Way] by law . . . for damages, . . . on account of personal injuries . . . caused by or arising out of each occurrence happening anywhere in the world."

The term "personal injuries" is separately defined and includes discrimination as one kind of personal injury. Also defined is "occurrence":

> The term "occurrence" means an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

The declarations of the policies in question provide for a deductible amount to be borne by Lee Way of $25,000 *per occurrence.*

Thus, if Lee Way's discriminatory conduct constituted one occurrence, then Lee Way bears only one $25,000 deductible amount. If Lee Way's conduct as to each individual discriminatee constituted a separate occurrence as to each, then Lee Way must bear the first $25,000 of each back-pay award.

### II. Single vs. Multiple Occurrence

The Court is unable to find another case that has addressed this precise issue. The question of what constitutes a single "accident" or "occurrence", as the terms are used within liability policies to limit an insurer's liability to a specified amount, has been addressed in numerous cases and is the subject of one annotation. 55 A.L.R.2d 1300; *see also,* 8 Appleman's *Insurance Law and Practice* § 4891 and *Long, The Law of Liability Insurance* §§ 2.12–2.14. The cases indicate that a court should "examine the policies in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes." *Champion International Corp. v. Continental Casualty Co.,* 546 F.2d 502, 505 (2nd Cir. 1976); *see also, Union Carbide Corp. v. Travelers Indemnity Co.,* 399 F.Supp. 12, 17 (W.D.Pa.1975). The district court in *Union Carbide v. Travelers, supra,* explained that a term such as "occurrence" should be construed in the light of the hazard insured against. *Id.*

In this case the hazard insured against is discrimination. In the prior litigation, Lee Way was found to have engaged in a "pattern and practice" of discrimination. "Pattern and practice" actions have the following characteristics:

1. A pattern and practice of discrimination exists only where the defendant routinely follows generalized policies, procedures or practices which have a discriminatory effect. Individual instances of discrimination are not a pattern and practice. *See Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 531 (1977); *United State v. Mayton*, 335 F.2d 153 (5th Cir. 1964); *United State v. Dillon*, 429 F.2d 800, 804 (4th Cir. 1970); *United State v. Ironworkers*, 443 F.2d 544, 551–552 (9th Cir. 1971); *United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 441 (5th Cir. 1971); *United States v. T. I. M. E.—D. C.*, 517 F.2d 299, 319 (5th Cir. 1975); and *United States v. City of Buffalo*, 457 F.Supp. 612, 620 (W.D.N.Y.1978).

2. A pattern and practice of discrimination is ordinarily proven through the use of statistics and other evidence of a general nature. Proof of individual instances of discrimination alone is not proof of a pattern and practice. *See, Teamsters v. United States, supra*, 431 U.S. at 339 n. 20, 97 S.Ct. at 1856; *United States v. Mayton, supra* ; *United States v. Dillon, supra*, at 804; *United States v. Ironworkers, supra*, at 550–551; *United States v. T. I. M. E.—D. C., supra*, at 311–313; *United States v. City of Buffalo, supra*, at 620, 621–622.

3. In a pattern and practice case, the cause of action belongs to the Government and not to the individuals affected. However, once the defendant's liability is established, the Government can obtain equitable relief (including back pay) for those specific individuals found to have been affected by the pattern and practice. *See, Teamsters v. United States, supra*, 431 U.S. at 360, 97 S.Ct. at 1867; *United States v. Mayton, supra* at 158; and *United States v. Georgia Power Company*, 474 F.2d 906 at 920–921 (5th Cir. 1973).

4. Intent to discriminate is irrelevant in a pattern and practice case. Instead, the Government must merely show that the defendant's policies, procedures or practices were not accidental or inadvertent. *See, Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971); *Teamsters v. United States, supra*, 431 U.S. at 349, 97 S.Ct. at 1861; and *United States v. Jacksonville Terminal Co., supra*, at 438, 442–443.

5. In a pattern and practice case, the defendant's policies, procedures and practices need not themselves be discriminatory. Rather, if they are facially neutral but have the effect of perpetuating past discrimination, the defendant is nevertheless liable. *See, Griggs v. Duke Power Co., supra*, 401 U.S. at 430, 91 S.Ct. at 853; *Teamsters v. United States, supra*, 431 U.S. at 349; *United States v. Dillon, supra* at 804; *United States v. Jacksonville Terminal, supra* at 938; and *United States v. City of Buffalo, supra* at 618.

The findings and conclusions of the district court in *United States v. Lee Way* indicate that these same characteristics existed at Lee Way. The court concluded that Lee Way discriminated on a "system-wide basis" (Conclusion 6) which was found to be "corporate policy" (Finding 34). The government presented statistical evidence establishing a prima facie showing of discrimination as well as evidence of individual instances serving as "examples" which "confirmed" the Court's findings of system-wide discrimination (Finding 49 and Conclusion 8). Furthermore, the court found that evidence of the company's discriminatory reputation was relevant and admissible in proving a pattern or practice of racial discrimination (Conclusion 19). The judgment established clearly that the discrimination suffered by Lee Way's minority employees resulted from a uniform, system-wide policy.[2]

2. Having established Lee Way's liability for a pattern and practice of discrimination, the court then considered each individual discriminatee's entitlement to relief. Not until the relief phase of the trial did the court delve deeply into individual claims. At that stage, individual employees were not required to prove specific acts of discrimination; the burden shifted to Lee Way to prove in each instance that an individual was not affected by the pattern and practice of discrimination, and, if Lee Way failed, the individual would be deemed entitled to relief. (Tenth Circuit Slip Opinion at 32–33).

When the language of the Transport policies is construed in light of the particular hazard insured against (see authorities cited *supra*), the inevitable conclusion is that the discrimination suffered by Lee Way's employees constituted a single "occurrence" as that term is used in the policies.

The definition of "occurrence" is broad in its scope:

> The term "occurrence" means an accident or a happening or event or a *continuous or repeated exposure to conditions* which . . . result in personal injury . . during the policy period. *All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.* (emphasis added)

The first sentence of the definition standing alone indicates that the discrimination here constituted one "occurrence". Lee Way's employees were subject to a "continuous or repeated exposure to conditions," viz., company-wide discriminatory policies and practices, which resulted in "personal injury," *i. e.* discrimination. The prior judgment (as well as relevant case law) shows that the pattern and practice of discrimination found to have occurred consisted of generalized discriminatory policies routinely followed. Minority employees suffered a "continuous or repeated exposure" to such discriminatory conditions and thus there was only "one occurrence."

■ The last sentence of the quoted definition establishes clearly that the pattern and practice of discrimination constituted "one occurrence." It states, that all exposure "to substantially the same general conditions" shall be deemed "one occurrence." The individual discriminatees were exposed to the same system-wide corporate policy of discrimination, albeit at different times and places. Yet, the language is clear in its intent that *all* exposure to the same conditions is deemed *one* occurrence. These words must be given their plain meaning and not construed in a technical or limited

sense. *National Aviation Underwriters, Inc. v. Altus Flying Service, Inc.*, 555 F.2d 778 (10th Cir. 1977); *Wylie v. Travelers Insurance Co.*, 534 P.2d 1293 (Okla.1974). It follows that all exposure to the pattern and practice of discrimination (*i. e.*, "substantially the same general conditions") must be deemed "one occurrence."

The fact that Lee Way operated four separate trucking terminals (Oklahoma City, Los Angeles, Houston, and San Antonio) is no reason for dividing Lee Way's liability into four separate occurrences—one occurrence at each of the four terminal locations. Exposure to the same general conditions "existing at or *emanating from* one premises location" constitutes a single "occurrence." (emphasis added) The court in *United States v. Lee Way* concluded that the pattern and practice of discrimination was a continuous company-wide policy traceable to the decisions and procedures made at Lee Way's headquarter's terminal in Oklahoma City. Lee Way's discriminatory policies originated in Oklahoma City and emanated from its headquarters there; the discriminatory policies thus emanated from one location; it would gild the lily to say more.

The fact that the parties provided for a "per occurrence" deductible, as opposed to a "per claim" deductible, is further indication that the parties intended that Lee Way's discriminatory practices would be deemed a single occurrence. The $25,000 deductible "per occurrence" suggests that the policy was not intended to define coverage on the basis of individual instances of discrimination. In a case involving very similar policy language, the Second Circuit affirmed a district court's holding that the continuous and repeated distribution of defective products constituted but a single "occurrence," even though there were 1400 different claims arising from individual ultimate users. *Champion International Corp. v. Continental Casualty Co.*, 546 F.2d 502, *supra*. The appellate court considered the

insured's selection of a "per occurrence" deduction to be important in interpreting "occurrence". *Id.* at 505. It regarded the insured's distribution of defective vinyl-covered paneling as one "occurrence" out of which 1400 "claims" arose. *Id.* at 506. In the instant case, each individual award of back pay should be regarded as a different "claim" arising out of but one "occurrence," viz., the continuous and repeated exposure to discriminatory employment conditions.

Transport could have limited the meaning and scope of discrimination to single, individual acts of discrimination and excluded from coverage a pattern and practice of discrimination; it did not do so. Discrimination is included without qualification in the definition of "personal injury," and "personal injury" is used in the expansive definition of "occurrence". In any event, any doubt regarding the extent of "discrimination" covered, must be resolved against Transport. *Hardberger and Smylie v. Employers Mut. Liability Ins. Co.,* 444 F.2d 1318 (10th Cir. 1971) (applying Oklahoma law).

Finally, although the plain language of the policy alone supports the Court's "single occurrence" conclusion, the analogous case law also upholds this result. The rationale underlying the various decisions which have held that particular events constituted but a single occurrence has been that courts generally look to the *cause* as opposed to the *effect* of such events. The great majority of courts have adopted a "cause" analysis, *American Casualty Co. v. Heary,* 432 F.Supp. 995, 997 (E.D.Va.1977), holding that where a single event, process or condition results in injuries, it will be deemed a single occurrence even though the injuries may be widespread in both time and place and may affect a multitude of individuals. *See generally* 55 A.L.R.2d at 1303; *see also, St. Paul-Mercury Indemnity Co. v. Rutland,* 225 F.2d 689 (5th Cir. 1955) (derailment resulting in injury to sixteen freight cars—single occurrence); *Haerens v. Commercial Cas. Ins. Co.,* 279 P.2d 211 (Cal.App.1955) (several panes of glass broken while work-ing on house—single occurrence); *Barrett v. Iowa National Mut. Ins. Co.,* 264 F.2d 224 (9th Cir. 1959) (fire damage to contents of different apartments—single occurrence); *Weissblum v. Glens Falls Ins. Co.,* 31 Misc.2d 132, 219 N.Y.S.2d 711, *rev'd on other grounds,* 40 Misc.2d 964, 244 N.Y.S.2d 689 (1961) (numerous lights broken at different times by different persons during construction work—single occurrence); *Wilkinson & Son, Inc. v. Providence,* 124 N.J.Super. 466, 307 A.2d 639 (1973) (contractor damaged several apartments by tracking paint on carpets—single occurrence); *Union Carbide Corp. v. Travelers Indem. Co.,* 399 F.Supp. 12 (W.D.Pa.1975) (defective chemical product caused widespread damage to a variety of ultimate users—single occurrence); *Champion Intl. Corp. v. Continental Cas. Co.,* 546 F.2d 502 (2nd Cir. 1976) (defective vinyl-covered paneling caused widespread damage to a variety of ultimate users—single occurrence); *Southern Intl. Corp. v. Polyurethane Ind., Inc.,* 353 So.2d 646 (Fla. App.1977) (contractor damaged several different condominiums while applying sealant to each roof—single occurrence); *American Cas. Co. v. Heary,* 432 F.Supp. 995 (E.D.Va. 1977) (automobile accident caused chain reaction of accidents—single occurrence); *Michaels v. Mutual Marine Office, Inc.,* 472 F.Supp. 26 (S.D.N.Y.1979) (ship's deck damaged over period of days by repeated dropping of "drag buckets"—single occurrence). *But see Elston-Richards Storage Co. v. Indemnity Ins. Co. of North America,* 194 F.Supp. 673 (W.D.Mich.1960), *aff'd* 291 F.2d 627 (6th Cir. 1961). The judgment in *United States v. Lee Way* clearly establishes that the individual discriminatees were harmed by a single, continuous cause: company-wide discriminatory employment policies.

The Court could not find any decisions of the Oklahoma appellate courts on this subject, i. e., the construction of "occurrence" in a liability policy.[3] The Court believes, however, that Oklahoma would apply the prevailing view. According to that view,

---

**3.** The Court previously determined, and the parties agreed, that Oklahoma law applies.

the particular events involved here should be regarded as a single occurrence.[4]

## III. Coverage of Back-Pay Awards

Transport argues that its coverage of the back-pay awards assessed in *United States v. Lee Way* is limited in two respects: (1) there is no coverage for any back-pay awards (even those falling within the policy period) resulting solely from an act occurring prior to the policy period, and (2) in any event, there is no coverage for any portion of a back-pay award for the period prior to the first issuance of the relevant policies (January 1, 1967). (Transport does not question its liability for damages occurring after the policy period; such liability is specifically covered under condition C of the applicable policies).

This Court having now determined that the discrimination by Lee Way was "one occurrence" under the policies, the short answer to Transport's first argument is to be found in *Champion v. Continental Casualty Co.*, 546 F.2d 502, *supra*, (1400 claims arising out of a single occurrence) as well as the other cases above cited which reflect a single occurrence and multiple claims.

■ It is not necessary that the wrongful conduct occurred during the policy period; it is only necessary that actual damage result during the policy period. The recognized principle is stated in 57 A.L.R.2d 1379, at 1389:

> It appears to be well settled that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. (citations omitted)

This is consistent with the policy definition of "occurrence" which only requires that the injury result during the policy period. As shown above, the individual discriminatees were actually damaged (*i. e.*, were denied certain rights) as long as Lee Way maintained its discriminatory employment policies. The injuries continued during the policy period, even in those instances where an act of discrimination occurred prior to the policy period. Consequently, all back-pay awards, regardless of date of discrimination, from and after January 1, 1967, are covered by Transport's policies.

Transport's second contention—that no coverage is provided for back pay awarded for the period prior to January 1, 1967—is more difficult. The policies simply state that coverage is limited to injuries occurring during the policy period.

Lee Way argues that if an event causes any injury during the policy period, then it is an "occurrence," and all "ultimate net loss" (a term defined by the policy) from that occurrence is covered, including damages which precede the policy period. The term "ultimate net loss" is defined as "the total sum which the insured . . . become[s] obligated to pay by reason of personal injury . . . paid as a consequence of any *occurrence* covered hereunder . . . ." (emphasis added). Lee Way recognizes that "occurrence" is limited to an event which results in personal injury "during the policy period," but contends that such language is no limitation on coverage. Lee Way relies on a line of cases which stand for the proposition that if an event insured against is in progress when the insurance terminates, the entire loss caused thereby is coverable. *See, e. g. Pruitt v. Hardware Dealers Mut. Fire Ins. Co.*, 112 F.2d 140 (5th Cir. 1940); *Rochester*

4. The insurance industry has been broadening the definition of occurrence. An October 1972 F.C. & S. Bulletin, published by the National Underwriters Co., stated at page A–3 that the "continuous or repeated exposure to conditions" language in the definition of occurrence was intended to avoid the application of multiple occurrences. This language represented a change from previous wording that had been interpreted less expansively. The Federation of Insurance Counsel published an article in its Spring, 1975, F.I.C. Quarterly analyzing the same definition of occurrence as used in the Transport policies. The article explains at page 245 that the definition is intended to result in only a single application of the occurrence limit in repeated exposure cases. Clearly the insurance industry has intended to broaden, rather than shrink, the definition of occurrence.

*German Ins. Co. v. Peaslee-Gaulbert Co.,* 120 Ky. 752, 87 S.W. 1115 (1905). These cases are inapposite. Here, the injuries preceded issuance of the policies and continued into the policy period, rather than succeeding the termination of the insurance. Lee Way's interpretation of the policies' coverage provisions ignores the clear language of the policies.

 In sum, the Transport policies covering discrimination were issued on January 1, 1967, and provided coverage for damages which accrued during and after, but not before the policy period. Transport's liability for back-pay damages is therefore limited to awards and portions of awards accruing from and after January 1, 1967.

### IV. Apportionment of Defense Costs

Finally, Transport argues that the costs of defending the discrimination suit should be apportioned between Transport and Lee Way, since Lee Way was essentially a self-insurer prior to January 1, 1967. Transport suggests either of two methods: (1) apportionment according to the number of years which Lee Way and Transport respectively provided self-insurance or insurance, or (2) apportionment according to the fraction of the total damages awarded for each is responsible in the light of this opinion.

Lee Way counters that apportionment of its defense costs is not feasible and that, in any case, such costs should be fully reimbursed by Transport. Lee Way argues that the bulk of its defense costs were incurred in defending the liability phase of the Government's pattern and practice suit, and that those costs simply cannot be allocated among separate claimants or time periods. Lee Way further argues that its defense costs in the relief phase of the litigation related to general matters—such as disputes regarding computation of back pay and claims by individuals who were not awarded relief by the special master or the court—and are not susceptible to apportionment.

The Court agrees with Lee Way. Neither method of apportionment proposed by Transport seems practicable or justified. The reasons for apportionment of defense costs present in *Insurance Company of North America v. Forty-eight Insulations, Inc.,* 451 F.Supp. 1230 (E.D.Mich.1978) are not present here. The Court accordingly concludes that Transport is liable for the full amount of defense costs sustained by Lee Way in defending *United States v. Lee Way.*

In sum, the Court finds and concludes: (1) that the liability imposed upon Lee Way in *United States v. Lee Way* represents a single "occurrence", as that term is used in Transport's excess umbrella policies; (2) that the subject policies provide coverage for all back pay for the period after January 1, 1967; and (3) that the subject policies provide coverage for the full amount of defense costs incurred by Lee Way in defending *United States v. Lee Way.*

Counsel for Lee Way will promptly prepare and submit to the Court a judgment in accordance with this Opinion.

SO ORDERED.