DECISION
Before the Court are Rule 56 cross motions for summary judgment brought by plaintiff, Town of Cumberland ("Town"), and the defendants, Rhode Island Interlock Risk Management Trust, Inc. ("Trust"), Underwriters at Lloyds, London, CNA Reinsurance of London, Ltd. and Maryland Casualty Company ("Underwriters") (collectively, the "defendants"). Jurisdiction is pursuant to General Laws of Rhode Island § 9-30-1.
 Facts/Travel
This is an insurance coverage dispute arising from a 1.6 million dollar settlement by and among the Town and L.A. Ray Realty and successors in interest to Savage Bros., Inc., namely Richard and Robert Savage (collectively, the "underlying claimants"). Pursuant to the underlying lawsuit, the Town was held liable to the underlying claimants for interference with contractual relations and violating their civil rights. The Town and the defendants are both seeking summary judgment on the issue of whether the conduct of the Town constitutes a single occurrence under the terms of the insurance policy.
 A. Underlying Claim and Settlement[1]
On September 28, 1987, the Town of Cumberland Planning Board ("planning board") adopted new subdivision regulations that included a grandfather rights clause ("grandfather clause"). The grandfather clause served to exempt from the new requirements those subdivision applications submitted on or before September 28, 1987. Prior to September 28, 1987, the underlying claimants had submitted to the planning board subdivision applications for several of their properties. On October 7, 1987, the Town Council ("town council") amended the Town's zoning ordinance to incorporate both the new regulations and the grandfather clause.
On April 20, 1988, Marlene Smith ("Smith"), a member of the town council, proposed an amendment to the Town's zoning ordinance. The amendment would require a two acre minimum for residential lots in Agricultural A and B districts, however, lots of record would be exempted. After a public hearing, the proposed amendment was defeated by the town council.[2]
On July 7, 1988, Smith again proposed amending the zoning ordinance to require two acre minimum lots in the Agricultural A and B districts. This proposal now included a grandfather clause exempting lots of record and those subdivision applications filed with the planning board as of September 28, 1987. At a mandatory public meeting held on August 3, 1988, the Town's Mayor, Francis Stetkiewicz ("Stetkiewicz") and several townspeople testified in favor of the amendment. Once again, the proposed amendment was rejected by the town council.
Subsequently, a petition drafted by the town solicitor, Thomas F. Almeida ("Almeida"), was circulated requesting that the following referendum be placed on the November 1988 election ballot:
 "All land zoned Agricultural A or B in the Town of Cumberland shall require a minimum lot size of 2 acres except for pre-recorded lots. This Act shall take effect immediately upon regular validation of the vote if a majority of electors voting on this referendum item in the Town of Cumberland shall approve."
On September 8, 1988, Almeida sent a letter to the Rhode Island Secretary of State, requesting that the question of whether to amend the zoning ordinance to set two acre minimum lots in Agricultural A and B districts should be placed on the ballot for consideration by the electorate. The letter also included a copy of the relevant article of the zoning ordinance as it would read if the referendum passed.[3] On November 8, 1988, the referendum was approved in a town wide election.
On November 21, 1988, the planning board denied all pending subdivision applications that did not comply with the new two acre lot minimum requirement. The underlying claimants' applications were included in those rejected. On that same day, the underlying claimants brought a mandamus action in the Superior Court to compel the planning board to hear their subdivision applications. The trial justice determined that the underlying claimants were entitled to a detrimental-reliance hearing before the planning board.
On January 18, 1989, the town council amended the zoning ordinance incorporating the two acre lot minimums, effective as of November 16, 1988, the date on which the board of canvassers certified the referendum election results.[4]
On July 17, 1989, the planning board conducted the detrimental-reliance hearings, and once again denied the underlying claimants' subdivision applications. The underlying claimants appealled to the Town of Cumberland Zoning Board of Review which upheld the planning board's decision. Thereafter underlying claimants appealed to the Superior Court, but the appeal was deemed moot by reason of the Supreme Court's decision in L.A. Ray Realty, et al. v. Town Council of Cumberland, 603 A.2d 311 (R.I. 1992).
The underlying claimants filed a second complaint in the Superior Court seeking damages against the Town for alleged substantive and procedural due process violations and intentional interference with their prospective economic advantage. On March 8, 1994, the trial justice held that the underlying claimants' due process rights had not been deprived. However, the trial justice did find that the Town had intentionally interfered with their prospective economic advantage and was, therefore, liable to the underlying claimants for damages.
On June 26, 1995, the trial justice found that the underlying claimants had proven damages in the amount of $1,094,742.81.[5] The trial justice concluded that because the Town was engaged in a governmental function, each of the underlying claimants' recovery was limited to $100,000.00, without interest or costs. Both the Town and the underlying claimants appealed the Superior Court decision.[6]
On July 17, 1997, in L.A. Ray Realty, et al. v. Town of Cumberland, et al., 698 A.2d 202 (1997), our Supreme Court affirmed the trial justice's finding of interference with economic advantage and contractual relations. The court also upheld the trial justice's finding that the Town's interference with the underlying claimants' amounted to egregious conduct, thus precluding the Town from governmental immunity. Nevertheless, the Supreme Court upheld the trial justice's finding that damages in the tort could not exceed $100,000.00. Finally, the court found that the underlying claimants' substantive and procedural due process rights were violated by the Town, and that the underlying claimants were entitled to damages in the full amount pursuant to42 U.S.C. § 1983. Ultimately, the Town settled with the underlying claimants in the amount of $1,642,000.00.
Shortly thereafter, the Town filed a declaratory judgment and breach of contract lawsuit against the defendants. The Town sought indemnification under certain insurance policies for loss incurred from settling with the underlying claimants. The defendants argued that the Town's intentional violation of the underlying claimants civil rights was not covered by the insurance policy. The Town moved for summary judgment. In Town of Cumberland v. Rhode Island Interlock Risk Management Trust, Inc., et al., C.A. No. 99-0023, October 2, 2000, Silverstein, J., this Court granted the Town's motion for summary judgment and denied the defendants' cross motions. This Court held that the defendants were obligated to the underlying claimants under the Town's general liability insurance policy for losses incurred from civil rights violations, and further determined that although the defendants were not liable to indemnify the Town under the errors and omissions clause in the insurance policy they were obligated to indemnify under the terms of the general liability insurance policy.
 B. The Instant Action
The Town is a member-owner of a risk sharing pool of governmental entities organized pursuant to G.L. § 45-5-20.1. At all times pertinent to this litigation, the Town was covered by a self-insurance retention of $250,000.00 that the Trust managed. Additionally, the Town, by and through the Trust, carried an excess general liability insurance through the Underwriters, Lloyd's, London. The Trust is the assured on the Underwriter's policy which provides general liability insurance and errors and omissions insurance in the amount of $250,000.00 in excess of the Trust's $250,000.00 self-insured retention. Under the policy's general liability coverage, the Underwriters agreed to indemnify the Town for the "ultimate net loss" for injuries arising out of one occurrence.
The Town argues that the term "occurrence" as defined in the insurance policy is ambiguous and capable of more than one interpretation. The Town asserts that its conduct towards the underlying claimants consisted of three separate occurrences happening over the course of two successive policy periods. As such, the Town argues that it is entitled to summary judgment on the issue of multiple occurrences. The defendants argue that the Town should not be indemnified for the full amount under the insurance policy. In fact, the defendants argue that the conduct of the Town constituted one occurrence under the policy and, therefore, is subject to the insurance policy's "ultimate net loss" limitation.
 Standard of Review
"Summary judgment is a drastic remedy to be granted sparingly." Superior Boiler Works, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 631 (R.I. 1998). When a trial justice is ruling on a motion for summary judgment, the only question before him or her is whether there is a genuine issue of material fact that must be resolved. Rotelli v. Catanzaro, 686 A.2d 91, 93 (R.I. 1996). Therefore, summary judgment should be granted "only if an examination of the admissible evidence, undertaken in the light most favorable to the non-moving party, reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Kiley v. Patterson, 763 A.2d 583, 585 (R.I. 2000) (quoting J.R.P. Associates v. Bess Eaton Donut Flour Co., 685 A.2d 285, 286 (R.I. 1996)).
A party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial. Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996). "A party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers of Cranston, Inc. v. Gelfuso 
Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
 A. Insurance Policy Interpretation
Under Rhode Island law, when interpreting an insurance policy, the court must attempt to determine the intent of the parties and not depart from the literal language of the policy absent a finding that the policy is ambiguous. Martinelli v. The Travelers Ins. Companies, 687 A.2d 443, 445 (R.I. 1996). "If the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end." Amica Mutual Ins. Co. v. Streicker, 583 A.2d 550, 551 (R.I. 1990). However, if an ambiguity exists, the language of an insurance policy must be given its plain, ordinary and usual meaning. Martinelli, 687 A.2d at 445. The language of the policy must be construed in the sense that the insured will reasonably understand the scope of the coverage. Slater v. U.S. Fidelity and Guaranty Co., 400 N.E.2d 1256, 1258 (Mass. 1980). A court should not stretch the meaning of terms to find an 7 ambiguity, rather, "where the terms of an insurance policy are capable of more than one interpretation or are deemed ambiguous, then a court will strictly construe the contract against the insurer." Bartlett v. Amica Mutual Ins. Co., 593 F.2d 45, 47 (R.I. 1991); see also Zanfagna v. Providence Washington Ins. Co., 415 A.2d 1049, 1051-52 (R.I. 1980); Greaves v. State Farm Ins. Co., 984 F. Supp. 12, 15 (D.D.C. 1997) ("A contract is not rendered ambiguous merely because the parties disagreed over its proper interpretation.").
In the instant matter, the Town contends that the definition of the term "occurrence" in the insurance policy is ambiguous in application and capable of more than one interpretation. Specifically, the Town claims that the phrase "existing at or emanating from one location" in the definition of "occurrence" leads one to conclude that any happenings or events that take place in multiple locations constitute a multiple occurrence for purposes of coverage. The defendants find the Town's ambiguity argument to be erroneous and argue that the definition of "occurrence" is clear and unambiguous.
The term "occurrence" is defined as:
 " An accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, or damage to property during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one location shall be deemed one occurrence."
There is no case law in Rhode Island addressing this particular issue. Therefore, this court will look to other jurisdiction for guidance. Mullins v. Federal Diary Co., 568 A.2d 759, 762 (R.I. 1990). This Court finds the holding in Uniroyal, Inc. v. Home Ins. Co., 707 F. Supp. 1382
(E.D.N.Y. 1988) to be instructive. The Town's attempt to rely on this case in support of its position is without merit. In Uniroyal, veterans and their families sought reimbursement for injuries sustained from widespread spraying of and exposure to "Agent Orange," during the Vietnam War. See id. The policy in Uniroyal defined one "occurrence" as "an accident or a happening or event or a continuous or repeated exposure to conditions . . . . All such exposure to substantially the same general conditions existing at or emanating from one premises location". See id. at 1372. The court held that deliveries of Agent Orange by Uniroyal were continuous and repetitious in nature and constituted a single occurrence. See id. at 1383. The court determined that the definition of the term "occurrence" under the insurance policy was "unambiguous and admits to no other interpretation." See id. at 1372; see also Michigan Chemical v. American Home Assurance Co., 728 F.2d 374, 379 (6th Cir.) (held that the policy term admit to only one interpretation); Transport Ins. Co. v. Lee Way Motor Freight, Inc., 487 F. Supp. 1325, 1329 (N.D.Texas 1980) (the court found the definition of the term "occurrence" under the insurance policy to be broad in scope but not ambiguous).
In the instant matter, the language of the insurance policy, in defining the term "occurrence," is essentially identical to that in the Uniroyal policy. The policy in this case defines the term "occurrence" as "a continuous or repeated exposure to conditions that result in personal injury." A literal reading of this phrase indicates that any continuous, repetitious or ongoing exposure to a particular condition that causes injury is deemed one occurrence. The insurance policy goes on to further define an "occurrence" as "all exposure to substantially the same general conditions." Once again the language and intent is clear, any and all exposure to the same harmful condition constitutes one occurrence. Finally, the insurance policy defines one "occurrence" as exposure to the same general conditions "existing at or emanating from one location." It would be absurd to interpret this portion of the definition to require that each exposure to the same general condition take place at the same physical location. To do so would create no limitation on the liability of insurers in those situations where a continuous course of conduct of the insured caused the injury. Rather, this phrase requires only that the condition or cause producing the injury emanate from one general location. As such, a court may find a single occurrence where a continuous company wide policy or course of conduct was traceable to the company's headquarters, thus emanating from one location. Transport, 487 F. Supp. at 1329. For the foregoing reasons, this Court finds the language of the defendants' insurance policy clear and unambiguous.
 B. Occurrence Analysis
The question before this Court is whether the Town's conduct in violating the civil rights of the underlying claimants constituted one occurrence, thereby limiting each insurers' liability. In determining whether there has been more than one occurrence, Rhode Island follows the majority view and employs the "cause theory." Bartholomew v. Ins. Co. of North America, 502 F. Supp. 246, 251 (D.R.I. 1980). Under the cause theory, there is a single occurrence when the court determines that there "was one proximate, uninterrupted, continuous cause which result in the injuries." See id. A single occurrence exists even if there are several discrete elements of damages and several injured parties or property. See id.; see also Affiliated FM Ins. Co. v. Beatrice Foods Co., et al., 1986 U.S. Dist. Lexis 24265, 3 (N.D.Ill. 1986) (citing Bartholomew v. Ins. Co. Of North America, 502 F. Supp. 246, 251 (D.R.I. 1980)). ("A series of related injuries comprise a single occurrence for insurance coverage purpose where the injuries, though separate in time and place all flow from the same uninterrupted proximate cause.")
First, the Town maintains that three separate occurrences resulted in the injuries to the underlying claimants.[7] In Mead, the Ninth Circuit held that the numerous civil rights actions brought against the city under 42 U.S.C. § 1983 constituted one occurrence. Mead v. Granite State Ins., Co., 873 F.2d 1185 (9th Cir. 1988). The civil rights violations stemmed from eleven complaints of excessive force on behalf of the local police department. See id. at 1187. In Mead, the city was insured under a general liability insurance policy which defined one "occurrence" as "damage arising from repeated exposure to substantially the same general conditions." See id. The court found that liability under 42 U.S.C. § 1983 did not arise from the separate incidences of misconduct but from the underlying municipal policy of condoning the misconduct. See id. at 1188. The court held that the alleged policy of condoning police brutality constituted a single occurrence for purposes of establishing the insurers' liability under the per occurrence clause. See id.
In the instant matter, the Town's actions through its officials created an ongoing harmful condition. The injuries sustained by the underlying claimants are a direct result of the Town's egregious course of conduct. The evidence shows that the Town went to great lengths to prevent the underlying claimants from obtaining permission to subdivide their property. In fact, our Supreme Court, in L.A. Ray Realty, held that the actions of Town officials in altering referendums, passing invalid zoning ordinances and interfering with the underlying claimants constitutionally protected property interests were egregious and outrageous. 689 A.2d at 211. As such, this Court finds the Town's course of conduct in violating the civil rights of the underlying claimants as one proximate, uninterrupted, continuous cause resulting in the underlying claimants' injuries.
Second, the Town argues that the injury causing condition did not emanate from a single location as required by the policy. In the case of Transport Ins. Co. v. Lee Way Motor Freight, Inc., the court held that the company's pattern of racial discrimination at four separate locations constituted a single occurrence. 487 F. Supp at 1326. In Transport the language of the insurance policy was identical to that in the case at bar. See id. The court held, that even though the discrimination occurred at four different locations, the court deemed the discrimination was due to a company wide policy foster at or emanating from the corporate headquarters in Oklahoma. See id.
Similarly, in Uniroyal, Inc. v. The Home Insurance Co., et al., the court held that deliveries by Uniroyal of Agent Orange constituted a single continuous occurrence or a "repeated exposure to general conditions." 707 F. Supp. at 1383. The court determined that the deliveries "were part of a routinized, repetitive process." See id. The court noted that the number of deliveries was happenstance and not an indication of multiple occurrences. The court found that the "continuous or repeated exposure to condition" language had long been held to constitute one occurrence of a pervasive policy undertaken by the insured over several years. See id. at 1386. Moreover, the court concluded that to the extent that the deliveries of the Agent Orange emanated from Uniroyal's headquarters the court may find one occurrence. See id.
In the instant matter, the Town's course of conduct, although arising from actions of several town officials in different offices, constituted one occurrence. Over several years, town officials of Cumberland made decisions under the color of law which served to deprive the underlying claimants of their civil rights, thus creating a pattern of behavior similar to that found by the court in Transport. This Court finds that the violation of the underlying claimants rights was due to the Town's course of conduct emanating from one location, the Town of Cumberland.
Next, the Town contends that, even if the conduct of the town is deemed to have originated from one location, the actions still constitute separate occurrences since the actions taken by the trial justice in ordering a detrimental reliance hearing was an intervention so as to break the causal chain. "When the cause is interrupted, either by an independent cause, or by the actor regaining control over the causing factor, courts usually find that there is more than one `occurrence' . . . ." Slater, 400 N.E.2d at 1260. However, courts have found "there is but one accident or occurrence when there is an unbroken, immediate chain of events with a single, continuous proximate cause." Id. (Citations omitted.) This Court finds the Town's contention unpersuasive. The court order to hold detrimental reliance hearings was not an independent, intervening cause. In fact, the court order was directly related to preventing the Town's course of conduct. The actions that transpired after the order can only be considered just another exposure to substantially the same general conditions. The Town's blatant disregard of the order from the trial justice was part of a chain of events with one proximate cause.
Finally, the Town contends that the conduct in question transpired over two policy periods and thus is covered under separate policies. In Uniroyal, the court found that the "continuous or repeated exposure to condition" language had long been held to constitute one occurrence of a pervasive policy undertaken by the insured over several years. 707 F. Supp. at 1386. The fact that the conduct of the Town occurred over an extended period of time and under more than one insurance policy does not alter this Court's decision.
 Conclusion
After considering the memoranda submitted in support of the motion, this Court finds that there remain no issues of material fact to be resolved. Accordingly, the Town's motion for summary judgment is denied and the defendants' motions for summary judgment are granted. This Court finds that the conduct of the Town in violating the underlying claimants civil rights constituted a single occurrence for purposes of coverage under the various insurance polices.
Counsel for defedants shall submit an appropriate order for entry after notice of plaintiff's counsel.
[1] The material facts are undisputed. The facts set forth in this decision regarding the underlying claim are adopted from the findings of facts issued in L.A. Ray Realty, et al. v. Town of Cumberland, et al., C.A. 89-0449, November 30, 1994, Israel, J. and L.A. Ray Realty, et al. v. Town of Cumberland et al., 698 A.2d 202 (R.I. 1997).
[2] On May 15, 1988, while the proposed amendment was pending, L.A. Ray Realty submitted another application to subdivide a parcel of land located in the same development for which L.A. Ray Realty had previously submitted an application.
[3] This included mention of the grandfather clause for lots of record and subdivision application filed with the planning board on or before September 28, 1987.
[4] On January 26, 1989, the underlying claimants also filed a complaint in Superior Court, challenging the validity of the amendment. The Supreme Court invalidated the amendment, holding that using the referendum process to amend a zoning ordinance violated G.L. 1956 chapters 23 and 24. L.A. Ray Realty v. Town Council of Cumberland,603 A.2d 311 (R.I. 1992).
[5] L.A. Ray Realty was damaged in the amount of $778,117.81 and Richard and Robert Savage in the amount of $316,628.00.
[6] On appeal, the Town argued that the damage calculations were erroneous. The underlying claimants argued that the trial justice's limitation of damages to $ 100,000.00 each was improper, and that the trial justice erred in finding that the Town had not violated their due process rights.
[7] The Town cites them as (1) the presentation of the referendum question that violated the underlying claimants civil rights, (2) the passage of the zoning amendment in violation of the underlying claimants civil rights, and (3) the Town officials' conduct during detrimental-reliance hearings order by Judge Needham of the Superior Court.