**GOOSE CREEK CONSOLIDATED I.S.D., Appellant,**

v.

**CONTINENTAL CASUALTY CO., et al., Appellee.**

**No. 01–83–0162–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 22, 1983.

Stephen Doncarlos, Houston, for appellant.

Brock Akers, Houston, for appellee.

Before WARREN, DUGGAN and DOYLE, JJ.

## OPINION

DOYLE, Justice.

This is an appeal from an order granting summary judgment to the appellee. The trial court found that each of two fires occurring at two different schools at different locations and at different times constituted separate occurrences as a matter of law under the insurance policy in this case and granted appellees' motion for summary judgment.

We affirm the trial court's judgment.

Goose Creek Consolidated Independent School District purchased insurance coverage from the appellee for its several properties. On or about December 23, 1979, two fires occurred on two of Goose Creek's properties. The first occurred at San Jacinto Elementary School and was reported to the fire department at 5:43 a.m. The second occurred at Baytown Junior School and was reported to the fire department at 7:29 a.m. The two schools are located at different addresses, several blocks apart. The reports prepared by the Baytown Fire Department indicated that the cause of each fire was arson. In its brief, the appellant maintains that there is evidence to support a conclusion that the fires were started by the same individual or group of individuals. The appellees specifically denied the statement, pursuant to Tex.R.Civ.Pro. 419.

The appellees paid all claims except $200,-000, representing two deductibles for two separate occurrences. The appellant's position is that the fires at its buildings were in all likelihood caused by the same individual or group acting at or near the same time, therefore, only one $100,000 deductible should be retained by the appellees. The appellees contend that since there were two fires, the retention clause should be applied twice, therefore, appellees are liable only for damages over $200,000 for the two buildings.

The appellant argues that the trial court erred in granting the motion for summary judgment in that the trial court used an erroneous standard to hold that as a matter of law the two fires in question constituted two separate loss occurrences. It contends that traditionally courts apply either a "cause" or "effect" analysis in determining whether a certain set of facts involved only one or several occurrences as the term was used in the context of any insurance policy. In the instant case, the appellant argues that had the trial court applied the "cause" analysis, it would have reached a different result.

The appellees contend that this court must interpret the insurance policy and determine whether the two fires constitute one loss occurrence or two. They further contend that regardless of which test is used, the result would be the same. They argue that the facts presented do not lend themselves to a cause or effect analysis, but should be analyzed in terms of the "unbroken chain of events" or "process or condition" type analysis.

In its simplest form, the issue before this court is whether the two fires constitute one loss occurrence or two. The facts are undisputed that the fires occurred at two different locations several blocks apart at different times. Our decision must rest upon the applicability of the retention clause and the definitions thereunder as set out in the policy under which the appellant was insured. Thus, we must interpret the policy as a matter of law in view of the undisputed facts.

The retention clause of the subject insurance policy provides as follows:

Article I—Retention

A. The company shall be liable in respect of each and every loss occurrence irrespective of the number and kinds of risks involved, for 100% of the excess over and above an initial net loss to the Insured of $100,000.00, in each and every loss occurrence, subject to the limits set. forth in Article V.

B. It is warranted by the Insured that in respect of each and every loss occurrence, its initial net loss retention of $100,000.00 shall be retained at its own risk and not insured in any way.

Article II—Definitions

A. The term "initial net loss" as used herein means the ultimate net loss by perils insured against after deducting any salvage and recoveries from any source other than this Agreement.

B. The term "loss occurrence" as used herein, means the total loss by perils insured against arising out of a single event. When, however, the term "occurrence" shall apply to loss or losses from windstorm, it shall be held to mean a period of 48 consecutive hours.

Immediately it becomes apparent that the appellee intended to limit its liability to "each and every loss occurrence". By definition we are told that "loss occurrence", as used in the retention clause, "means the total loss by perils insured against arising out of a *single* event." (emphasis added) A fair, reasonable and logical interpretation, therefore, would equate "loss occurrence" with "single event", so that each "single event" triggers a "loss occurrence" within the terms of the policy.

We find no Texas case law passing on the application and interpretation of "occurrence" or "single event" clauses as those terms are used in the instant case. We do find two Texas federal cases in Texas which interpreted the term "occurrence". *Pincoffs Co. v. St. Paul Fire and Marine Insurance Co.,* 447 F.2d 204 (5th Cir.1971) and *Transport Ins. Co. v. Lee Way Motor Freight,* 487 F.Supp. 1325 (N.D.Tex.1980).

Courts in federal and foreign jurisdictions have applied either a "cause" or "effect" analysis in determining whether a set of facts involved only one or several occurrences. The majority of courts have adopted a "cause" analysis rather than "effect." *Transport Ins. Co., supra* at 1330; *American Casualty Co. v. Heary,* 432 F.Supp. 995 (E.D.Va.1977). The courts have first examined the insurance policy to determine the meaning of "occurrence," and have then examined the cause of the particular events involved, rather than the effect of the event.

The policy before us does not define "single event". We are inclined to ascribe the ordinary meaning to this phrase by applying Webster's New Collegiate Dictionary (150th Ed.1981) definition of "single" as "... consisting of or having only one part, feature or portion; ...." and the definition of "event" as "something that happens."

Although both parties have cited numerous cases touching upon "accident" or "occurrence", but many of the cases do not define these terms, and no case has been cited or found which attempted to define "single event." We conclude that all cases cited are distinguishable from the instant case and that no useful purpose would be served by discussing the holdings of these cases. We have carefully examined *Transport Ins. Co. v. Lee Way Motor Freight, supra,* heavily relied upon by the appellant. The court found that the hazard insured against was discrimination. *Lee Way* had been found guilty of engaging in the pattern and practice of discrimination, which resulted from a uniform, system-wide policy. The court concluded that the pattern and practice of discrimination constituted one occurrence because "[t]he individual discriminatees were exposed to the same system-wide corporate policy of discrimination, albeit at different times and places." *Id.,* at 1329. The court stated on that "where a single event, process, or condition results in injuries, it will be deemed a single occurrence even though the injuries may be widespread in both time and place and may affect a multitude of individuals." By way of contrast, the facts in our case show that the subject fires were not part of a process of continuum, but were set at different places and at different times. Whether they were set by one or different individuals or groups of individuals is of no consequence. In the *Maurice Pincoffs Company* case, *supra,* the Fifth Circuit Court, after citing several cases involving fires which have caused damage to several different claimants, stated the following rationale:

> ... These cases held that the single accident policy limits applied because, it was the single fire which caused liability for all the damages. It is clear that another fire would be another accident.

The appellant argues that it should be "entitled to attempt to prove, at least to a reasonable certainty, that its damages arose from but a single cause—the work of an arsonist on the morning of December 23, 1979." Even if this proof were made, it could have no bearing on the fact that two fires distinguishable in space and time occurred and that one did not cause the other.

We think that the better logic, as applied to the facts in the instant case, would dictate that where there are two fires at two different places with two separate causal factors, there are two loss occurrences.

The judgment of the trial court is affirmed.