**BETHANY CHRISTIAN CHURCH, Plaintiff,**

v.

**PREFERRED RISK MUTUAL INSURANCE COMPANY, Defendant.**

**Civil Action No. H–95–3735.**

United States District Court, S.D. Texas, Houston Division.

Aug. 26, 1996.

Tom Alexander, Alexander & McEvily, Houston, TX, for Plaintiff.

Michael Y. McCormick, Nelson & Zeidman, Houston, TX, for Defendant.

*MEMORANDUM AND ORDER GRANTING PREFERRED RISK MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING BETHANY CHRISTIAN CHURCH'S MOTION FOR SUMMARY JUDGMENT*

STACY, United States Magistrate Judge.

Before the Court is Bethany Christian Church's Motion for Summary Judgment (Document No. 16) and Preferred Risk Mutual Insurance Company's Cross Motion for Summary Judgment (Document No. 19). On December 8, 1995, the parties consented to trial before United States Magistrate Judge Frances H. Stacy. Upon such consent, the District Judge referred the case for all proceedings to Magistrate Judge Stacy.

Based on a review of the motions for summary judgment, the summary judgment evidence, and the applicable law, the Court is of the opinion that Preferred Risk Mutual Insurance Company's Cross Motion for Summary Judgment should be granted, and that Bethany Christian Church's Motion for Summary Judgment should be denied, for the reasons set forth below.

### I. *Applicable Law*

The United States Supreme Court has held that Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). This standard provides that the mere existence of some factual dispute will not defeat a motion for summary judgment. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir.1993); *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992). Rather, Rule 56 mandates that the fact dispute be genuine and material. *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 314 (5th Cir.1995). The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Kelley*

v. Price Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir.1993); Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of showing an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986). Once this burden has been met, the non-moving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist and that it consists of more than bare allegations in briefs and pleadings. Anderson, 477 U.S. at 250, 106 S.Ct. at 2511. The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 325, 106 S.Ct. at 2553. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994). Once the parties have submitted evidence of contradictory facts, justifiable inferences are to be drawn in the light most favorable to the non-movant. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

Even if the standards of Rule 56 are met, a court may deny a motion for summary judgment if, in its discretion, it determines that "a better course would be to proceed to a full trial." Anderson, 477 U.S. at 257, 106 S.Ct. at 2514; Veillon v. Exploration Services, Inc., 876 F.2d 1197, 1200 (5th Cir.1989).

In resolving the question of which law, federal or state, is applicable to the particular facts of this case, the Court is mindful of the principle that a federal court sitting in a diversity case is obligated to apply the substantive law of the state in which it is sitting. Hanley v. Forester, 903 F.2d 1030, 1032 (5th Cir.1990). Because this is a diversity case, dealing with state insurance law, this Court is bound by the Erie Doctrine to apply Texas law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## II. Background

Plaintiff Bethany Christian Church ("the Church") located in Houston, Texas, purchased an insurance policy from defendant Preferred Risk Mutual Insurance ("Preferred"), an Ohio Company, on or about January 24, 1994. See Plaintiff's Original Petition, Exhibit A, Document No. 1 (Policy). This policy, numbered 1136–423, covered various situations including employee dishonesty. Preferred Policy, CR 00 01 10 90, Employee Dishonesty Coverage Form (Coverage Form A—Blanket), p. 2 of 2. The Preferred policy was effective from December 1, 1993 to December 1, 1994 with a coverage limit of $50,000 per occurrence.

During the Preferred coverage period, the Church lost $51,421.24 in cash to theft by an employee, Linda Smith. During two previous policy periods while the Church was covered by Atlantic Mutual, Smith stole $1,493.97 in 1991–1992 and $29,629.92 in 1992–1993. During these three separate policy periods in effect from 1991 to 1994, Smith embezzled a total of $82,545.13 from the Church through altered and unauthorized checks. (See Exhibit D of Preferred's Response to the Church's Motion for Summary Judgment/Counter–Motion for Summary Judgment for a breakdown of the various thefts by Linda Smith). A summary of coverage and the thefts during the three policy periods follows:

| DATE | INSURER | LOSS | COVERAGE LIMIT |
|---|---|---|---|
| 12/91–12/92 | Atlantic Mutual | $ 1,493.97 | $50,000 |
| 12/92–12/93 | Atlantic Mutual | $29,629.92 | $50,000 |
| 12/93–12/94 | Preferred Risk | $51,421.24 | $50,000 |
| **TOTAL** | | $82,545.13 | |

The Church discovered the theft on or about November 1, 1994, whereupon it notified Preferred. The Church began furnishing proof of loss to Preferred on November 11, 1994. On December 14, 1994 and February 22, 1995, the Church furnished sworn proofs of loss setting out the Church's claim for Preferred to pay its policy limits of $50,-000.

On March 24, 1995, Preferred notified the Church it would pay only $19,776.54 for the losses. Preferred maintained that because the series of thefts by Smith from 1991

through 1994 amounted to one occurrence based on the policy definition of occurrence, and because there was other insurance, the Atlantic Mutual policies, in effect from 1991 through 1994 which covered a portion of the Church's losses, the liability of Preferred and Atlantic Mutual could jointly be no more than $50,000, the per occurrence limit under each policy. As Atlantic Mutual has already paid the Church $31,123.89 [1] for its losses, Preferred now maintains that its liability is no more than $18,876.11, the difference between the policy limits and the amounts previously paid to the Church by Atlantic Mutual. [2]

On or about March 30, 1995, Preferred tendered a check in the amount of $19,776.54 to the Church. Preferred intended the check to be for full satisfaction of the losses. The Church returned the check to Preferred to avoid the appearance of accord and satisfaction of Preferred's obligation to the Church. Subsequently, the Church filed suit against Preferred in the 11th Judicial District Court of Harris County, Texas. Preferred removed the case to the United States District Court for the Southern District of Texas, and filed a counter-claim for summary judgment.

For its December 1993–December 1994 loss of $51,421.24, the Church seeks $50,000, the policy limit, with prejudgment interest at the highest legal rate, from the date Preferred offered $19,776.54, March 24, 1995, plus attorney's fees of $25,000 and court costs, all to bear post-judgment interest at the highest legal rate until paid.

Preferred seeks $6,000 in attorney's fees and all costs of defense. Preferred argues that the Church's request for $25,000 in attorney's fees in this type of case is excessive and should, at most, be $10,000.

## III. Summary of the Argument of the Parties

In determining insurance coverage for employee dishonesty, the Church contends that a series of acts resulting in loss constitutes multiple occurrences, allowing it to recover separately under each policy in effect during the various losses. Additionally and alternatively, the Church asserts that an other insurance provision does not limit an insurer's liability to pay the highest policy limit in effect at the time of the discovery of the loss. Finally, the Church contends that an insured may stack non-overlapping policy limits in order to recover the full amount of the loss sustained where the occurrence extends through several policy periods.

Preferred contends that a series of acts resulting in loss constitutes a single occurrence under Texas law, limiting recovery by the insured to the highest policy limit in effect at the time of the discovery of the loss. As set forth below, an occurrence, as defined in the Preferred insurance policy and as interpreted by applicable law, means all loss caused by or involving one or more employees, whether the result of a single act or series of acts. Texas law also provides that the insured's indemnity limit is the highest limit that applies at a single point in time during the coverage period, and that non-overlapping policy limits are not stackable even where the claim occurrence extends throughout several policy periods.

## IV. Definition of Occurrence

In order to determine the policy limits available in this case, the Court must determine whether the series of thefts committed by Linda Smith is considered one occurrence. If the series is considered one occurrence, the total recovery for the entire amount stolen may not exceed the amount of the policy limit of the insurance policy that was in effect when the loss was discovered.

The Church asserts that the acts of Linda Smith constitute three separate occurrences, since they occurred over the course of three

---

1. The $31,123.89 was the total of the losses sustained during the two years of the Atlantic Mutual coverage. The first loss of $1,493.97 occurred during the coverage period 12/91–12/92, and the second loss of $29,629.92 occurred during the coverage period 12/92–12/93.

2. The difference between the $50,000 policy limit and what Atlantic Mutual has paid is actually $18,876.11, nevertheless, Preferred tendered $19,776.54 to the Church (see p. 6 of Preferred's Response to the Church's Motion for Summary Judgment/Counter–Motion for Summary Judgment, Document No. 19).

separate policy periods. Therefore, the Church claims Preferred should pay it $50,000, its per occurrence policy limit, to cover the majority of the $51,421.24 Smith converted while Preferred was the insurer. Preferred counters with the argument that the series of acts by Linda Smith constitutes one occurrence, making $50,000 the total recovery available to the Church for all thefts by Smith during the three policy periods.

### A. Occurrence as Defined in the Preferred Policy

Pursuant to the Preferred policy, occurrence is defined as: "all loss caused by or involving one or more 'employees,' whether the result of a single act or series of acts.". Preferred Policy, CR 00 01 10 90, Employee Dishonesty Coverage Form (Coverage Form A—Blanket), p. 2 of 2. This policy language does not limit an occurrence to the coverage period, nor does it distinguish between a single act versus a series of acts. What is critical in the policy language is the sum total of the loss caused by "dishonest acts committed by an 'employee,' whether identified or not, acting alone or in collusion with other persons...." Preferred Policy, CR 00 01 10 90, Employee Dishonesty Coverage Form (Coverage Form A—Blanket), p. 2 of 2. The Atlantic Mutual policy defines occurrence in the same way. See Defendant's Response to Plaintiff's Motion for Summary Judgment and Defendant's Counter–Motion for Summary Judgment, Exhibit B, Document No. 19 ("Defendant's Response").

### B. Applicable Case Law

 The coverage trigger issue for continuing occurrences has troubled courts across the country in recent years, and Texas has limited precedent on that issue. *CNA Lloyds of Texas v. St. Paul Ins. Co.*, 902 S.W.2d 657, 659–60 (Tex.App.—Austin 1995, writ dism'd by agr). In interpreting the

term occurrence, this Court looks to the definition of occurrence as it is defined in the Preferred insurance policy. If the insurance contract is worded so that it can be given a certain definite meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. Moreover, where there is no ambiguity, it is the court's duty to give words their plain meaning. *Texas Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 217–18 (Tex.App.—Fort Worth 1994, writ denied). Unambiguous terms used in an insurance contract are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense. *State Farm Mut. Ins. Co. v. Peck*, 900 S.W.2d 910, 912–13 (Tex.App.—Amarillo 1995, reh'g denied). When the language of an insurance policy is unambiguous, the courts must give the words used their ordinary meaning. *CNA Lloyds of Texas*, 902 S.W.2d at 659–60.

Although not many courts have dealt with the meaning of occurrence as it relates to insurance coverage for employee dishonesty, this Court looks for guidance to a federal court sitting in Texas that has applied the same definition of occurrence described in the insurance industry's standard Employee Dishonesty Coverage Form (Coverage Form A—Blanket), p. 2 of 2. In an unpublished opinion, *Potomac Ins. Co. of Illinois v. Lone Star Web, Inc.*, No. 3:93–CV–2122–H 1994 WL 494784 (N.D.Tex.1994),[3] the United States District Court for the Northern District of Texas interpreted an insurance contract that defined occurrence in the same way as it is defined in the Employee Dishonesty Coverage Form (Coverage Form A—Blanket), p. 2 of 2, of the Preferred policy under which the Church makes a claim in this case.

---

**3.** Unpublished opinions issued before January 1, 1996 have value as precedent. Local Rule 47.5.3 (5th Cir.). However, because every opinion believed to have precedential value is published, such an unpublished opinion should normally be cited only when the doctrines of res judicata, collateral estoppel or law of the case are applicable, or notice, sanctionable conduct, entitlement to attorney's fees, or the like are issues. None of these doctrines or issues apply to the instant case.

If such an unpublished opinion is cited in a brief, motion or other document being submitted to the court, a copy shall be attached to each copy of the brief, motion or document. Local Rule 47.5.3 (5th Cir.). A copy of the *Lone Star* opinion is attached at Exhibit E of Preferred's Response to the Church's Motion for Summary Judgment/Counter–Motion for Summary Judgment, Document No 19.

The *Lone Star* case involved employees stealing rolled paper from the employer, Lone Star Web's, warehouse for several years. Lone Star Web discovered the loss in April 1993 and timely reported the theft to its insurance company, Potomac Insurance Company of Illinois ("Potomac"). Lone Star Web had previously purchased a one-year insurance contract from Potomac effective April 3, 1991 through April 3, 1992, and renewed the contract for the year April 3, 1992 through April 3, 1993. The policy limit was $100,000 per occurrence and provided coverage for, among other things, acts of employee dishonesty. The issue presented in *Lone Star* was whether a series of acts constituted one occurrence, as that term was defined in the Potomac insurance policy. Lone Star Web argued that the series of thefts was not one occurrence, and therefore Potomac should pay separate policy limits under each consecutive policy. The Court in *Lone Star* held that a series of acts did constitute one occurrence for the purposes of determining the applicable policy limit for a recovery under an insurance policy for employee theft. The Court defined occurrence as: "all loss caused by, or involving, one or more 'employees,' whether the result of a single act or series of acts." *Potomac Ins. Co. of Illinois v. Lone Star Web, Inc.*, No. 3:93–CV–2122–H 1994 WL 494784 (N.D.Tex.) at *2. Based upon that definition, Lone Star Web was entitled to only $100,000, the policy limit of the second policy, even though it lost over $200,000 during the 1992 and 1993 policy periods.[4]

In determining what constitutes an occurrence in such a case, the Court in *Lone Star* looked to the definition of occurrence used in *Diamond Transp. Sys. v. Travelers Indem.*, 817 F.Supp. 710, 712 (N.D.Ill.1993), the facts of which are very similar to the facts in the instant case. An insured employer ("Diamond") sued its insurer ("Travelers") to re-cover a total loss of $750,000, resulting from a series of employee thefts over a period of several years. *Diamond*, 817 F.Supp. at 711. The Travelers crime insurance policies in effect during those years each had policy limits of $250,000 per occurrence. *Id.* Applying the definition later adopted in *Lone Star*, the *Diamond* court held the entire $750,000 loss was a single occurrence, and therefore Diamond could only recover up to the policy limit in effect at the time of discovery of the loss, or $250,000. *Id.*

■ Consistent with the *Lone Star* and *Diamond* cases, this Court rejects the Church's contention that it is entitled to separate recoveries on each of the three policies that were in effect during the thefts. Like the insured, Lone Star, the Church misinterprets the terms of the insurance contract, particularly the term occurrence. The thefts committed by the Church's employee Linda Smith, are a *series of acts*, which, as defined in Preferred's policy, constitute one occurrence. Although separate insurance companies provided coverage to the Church, in all of the coverage periods during which Smith converted funds from the Church, the policies of both Preferred and Atlantic Mutual clearly described an occurrence as a *series of acts* resulting in loss. This Court determines that the series of thefts by Smith at issue herein are a single occurrence under the three identical policy definitions of occurrence in the insurance industry's standard Employee Dishonesty Coverage Form (Coverage Form A—Blanket), p. 2 of 2. The Church may only recover from all its insurers, a combined total of $50,000, the policy limit in effect at the time the loss was discovered.[5]

In the alternative, the Church maintains that in order for Preferred to exclude or limit coverage, its exclusions must be clearly and expressly stated in the insurance contract.

---

4. The only policy which was found to apply to the loss was the second policy, because even though some of the loss occurred during the first policy, the policy language indicated that any loss discovered must be reported within one year of the expiration of the policy. The loss was reported on April 26, 1993. Since the first insurance policy had expired on April 3, 1992, April 3, 1993 was the latest date Lone Star could make a loss claim to be covered by the first insurance policy.

5. Where a single occurrence triggers coverage by more than one policy, the highest policy limit in effect during the coverage period is the applicable policy limit. See discussion of prohibition against stacking policy limits at § V.B *infra*.

According to the Church, because the terms of Preferred's insurance contract are ambiguous, the contract must be construed in its favor pursuant to applicable law. Specifically, the Church contends that whenever a contract of insurance is susceptible to more than one reasonable interpretation, the court should resolve the uncertainty by adopting the construction most favorable to the insured. The Church cites *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552 (Tex.1991); *State Farm Fire & Casualty Co. v. Reed,* 873 S.W.2d 698 (Tex.1993) in support of this proposition. Both cases cited by the Church, *Nat'l Union* and *State Farm,* deal with questions of who is covered by certain insurance policies where the language of the insurance contract is subject to more than one interpretation. Both cases were resolved in favor of the insureds because, although both contracts tended to exclude coverage under certain circumstances, it was difficult to tell what those circumstances were, given the ambiguous language of the policies. *Nat'l Union,* 811 S.W.2d at 555; *State Farm,* 873 S.W.2d at 699.

The Church's arguments are inapplicable to this case because the terms of the Preferred insurance contract, especially the definition of occurrence, are clear and unambiguous, and because Preferred is not asserting an exclusion, but is only applying to the occurrence the coverage limit described in its policy.

### V. *The Other Insurance Provision and the Stacking of Policy Limits Arguments*

#### A. The Other Insurance Provision

■ The other insurance provision in the Preferred Policy provides:

OTHER INSURANCE: This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity. However, this insurance will not apply to

the amount of loss that is more than the applicable limit of insurance shown in the declarations.

Preferred Policy, CR 10 00 10 90, Crime General Provisions, p. 2 of 4. Preferred contends that the other insurance provision in its policy protects it from liability for the full $50,000 per occurrence policy limit specifically outlined in its insurance contract. Because the series of thefts constitute one occurrence, Preferred maintains that the total recovery is limited to $50,000 for the combined loss caused by Smith where the loss was spread over the three policy periods. Preferred contends that the other insurance provision makes Atlantic Mutual liable for the losses sustained during its coverage periods, $1,493.97 from December 1991—December 1992 and $29,629.92 from December 1992—December 1993, up to the total policy limit of $50,000 for each of the two Atlantic policy periods. This would leave Preferred to pay only $18,876.11, the difference between the $50,000 policy limit and Atlantic Mutual's payments which total $31,123.89, for the losses sustained during Preferred's coverage period, $51,421.24 from December 1993—December 1994.

The Church disagrees with Preferred's interpretation of the other insurance provision, seeing the provision as a grant of coverage, rather than a limit on coverage. The Church relies on Section B, Limit of Insurance as providing coverage up to the $50,000 policy limit. Section B. provides: "The most we will pay for loss in any one 'occurrence' is the applicable Limit of Insurance shown in the Declarations." Preferred Policy, CR 00 04 10 90, Theft, Disappearance and Destruction Coverage Form (Coverage Form C), p. 1 of 2. The Church argues that there is no mention in Section B. of exceptions for other insurance. Nevertheless, the other insurance provision is mentioned at Section 11 of the Crime General Provisions of the Policy. Preferred Policy, CR 10 00 10 90, Crime General Provisions, p. 2 of 4. Plaintiffs either overlook the other insurance provision, or choose to ignore it.

Another argument asserted by the Church is that Section 13(b) of the Crime General Provisions expressly provides for coverage

since the loss occurred during the Preferred coverage period. Section 13(b) states: "Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the policy period." Preferred Policy, CR 10 00 10 90, Crime General Provisions, p. 3 of 4. Under Section 13(b), the Church maintains that because its $51,421.24 loss was sustained during the Preferred policy period, it is entitled to the full payment of $50,000.[6] However, section 13(b) does not have the effect of enlarging the policy limit. It serves only to exclude Preferred from liability for losses occurring during policy periods where Preferred is not the insurer. The timing of the thefts by Smith is otherwise irrelevant.

The plain language of the other insurance provision limits the total recovery from all three policies to the $50,000 policy limit in effect at the time of the discovery of the loss, since the three policies cover one occurrence. Therefore, the most the Church can recover for Linda Smith's theft is the amount of the policy limit in effect at the time the Church discovered the theft. *Diamond*, 817 F.Supp. at 712.

### B. Stacking of Policy Limits

In order for the Church to recover $50,000 from Preferred, as opposed to the difference between the $50,000 policy limit and the $31,123.89 Atlantic Mutual paid, the Church would have to stack the policy limits of all three policies in effect during the thefts. Stacking the policy limits would mean adding together the policy limits of the two Atlantic Mutual policies and the Preferred policy to make the maximum potential recovery a total of $150,000. Plaintiffs seemingly maintain

that they can stack the policies because they received the full amounts of their losses from Atlantic Mutual. But Plaintiffs fail to acknowledge that the total of the two losses of $1,493.97 and $29,629.92 is still substantially less than $50,000, the policy limit available under all three policies for the one occurrence.

■ The Texas Supreme Court has held that where two insurance policies do not overlap chronologically, the limits of those policies may not be stacked. *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 853–54 (Tex.1994). However, where there are multiple policies in effect for the same coverage period, those limits may be stacked.[7] In the instant case, the insurance policies have overlapping the coverage periods and may not be stacked.

In *Garcia*, the Cardenas family was seeking compensation from Dr. Garcia's medical malpractice insurer, American Physicians Insurance Exchange ("APIE"). In an earlier malpractice suit against Dr. Garcia, a jury awarded the Cardenas family approximately $2.5 million in damages for the harm Dr. Garcia caused Gustavo Cardenas. *Garcia*, 876 S.W.2d at 845. The Cardenas family released Garcia from personal liability for satisfaction of the judgment, became his assignees, and filed suit in Garcia's name against his liability insurers. *Id.* The issue presented in *Garcia* was whether Garcia's various medical malpractice policies[8] were stackable. The Cardenas family attempted to stack the policy limits of Dr. Garcia's various policies so that the limits totalled $1.6 million. *Id.* at 845. APIE argued that it was not liable because it was not an insurer at the time the malpractice or injury oc-

---

**6.** Neither side disputes the fact that the $51,421.24 loss occurred during the Preferred policy period.

**7.** For example, in *St. Paul Mercury Ins. Co. and Centennial Ins. Co. v. Lexington Ins. Co. and Landmark Ins. Co.*, 888 F.Supp. 1372 (S.D.Tex. 1995), an employee of Campbell Wells Corporation was injured in the course and scope of his employment. The employee and his wife sued Campbell Wells and its parent company Sanifill, Inc. Campbell Wells and Sanifill were insured by four separate insurance companies: Lexington Insurance Company, St. Paul Fire & Marine In-

surance Company, Landmark Insurance Company and Centennial Insurance Company. All four of the insurance companies covered Campbell Wells and Sanifill during the same policy period. Therefore, all four companies were liable for the satisfaction of the judgment.

**8.** Garcia was insured by the Insurance Corporation of America in 1980 for $100,000 on a "claims made" basis; in 1981 for $500,000 per occurrence; and in 1982 for $500,000 per occurrence. Garcia was insured by APIE in 1983 for $500,000 per occurrence.

curred. The court held that where a single occurrence triggers more than one policy, covering different policy periods, the insured's indemnity limits should be whatever limit applied at the single point in time during the coverage periods of the triggered policies when the insured's limit was highest. *Id.* at 855. In the *Garcia* case, that amount was $500,000. *Id.*

■ In this case, the Church was covered by three non-overlapping policies with identical $50,000 policy limits. The theft occurrence triggered coverage by all three policies. This Court applies the rule in *Garcia* and determines that the policy limits of the three applicable policies cannot be stacked. The Church's total recovery for Smith's thefts is therefore, limited to $50,000.

In its final argument, the Church maintains that it should recover $51,421.24 because it sustained $51,421.24 in losses during the Preferred policy period. The Church relies on *Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252 (Tex.App.—Dallas 1993, *writ denied per curiam* ), and *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380 (Tex.App.—Dallas 1987, *no writ* ), presumably for the proposition that damage or loss sustained during the policy coverage period is covered by the policy, regardless of when that damage or loss is discovered. Both *Cullen* and *Dorchester* involved property damage which was caused during a policy coverage period, but which did not manifest itself until a later time. The policyholders in *Cullen* and *Dorchester* prevailed against their respective insurers because the damage was said to have occurred at the time it was caused, not at the time it was discovered. *Cullen*, 852 S.W.2d at 257; *Dorchester*, 737 S.W.2d at 383.

*Cullen* and *Dorchester* concern coverage issues, but there is no dispute in this case about Preferred's coverage of the Church's $51,421.24 loss or the timing of Smith's theft of this amount. The parties agree that the Church sustained losses of $51,421.24 during Preferred's coverage period and that the Church is entitled to recover from Preferred for the loss sustained during the Preferred policy period. The dispute lies in the determination of how much money the Church is entitled to recover from Preferred for its losses. This can only be determined by defining occurrence, applying the correct policy limit, and enforcing the other insurance provision. Because the Church is entitled to reimbursement for losses sustained during the coverage period, limited by the policy limit for the occurrence, the Court finds that the Church is entitled to collect $18,876.11 from Preferred. This amount equals $50,000, the policy limit for a single occurrence, minus $31,123.89, the total amount already paid to the Church by Atlantic Mutual on other insurance policies.[9]

## VI. *Attorneys' Fees*

Both sides have requested attorneys' fees in this action. The Church seeks $25,000 in attorneys' fees, which Preferred maintains is excessive and should be limited to no more than $10,000. Preferred also seeks attorneys' fees in the amount of $6,000. Based on a review of the foregoing requests for attorneys' fees, the Court finds that there is insufficient documentation to support said requests. As such, the parties are hereby ORDERED to submit supplemental briefing, together with affidavits and time sheets, in support of their respective requests for attorneys' fees within 15 days of receipt of this

---

9. The Church proffers as exhibits a series of letters sent to it by Preferred, indicating varying degrees of coverage by Preferred. However, no estoppel claim is raised by the Church, and the letters have no effect on the reasoning and result of this opinion.

The Plaintiff tries to demonstrate that Preferred was not sure of its reimbursement responsibility to the Church as modified by the "other insurance" provision. The letters from Preferred are attached to the Plaintiff's Motion for Summary Judgment at Exhibits B–D. The first letter erroneously stated that Preferred would cover any loss above and beyond what Atlantic Mutual would cover. Exhibit B. The second letter was sent to correct the first letter, and stated that if Atlantic Mutual's policy limit was lower than Preferred's, and Atlantic Mutual exhausted that limit then Preferred would have exposure. Exhibit C. The third letter stated that the Preferred policy does not apply to loss recoverable under other policies except where the other insurance limit is insufficient to cover the loss. Exhibit D. In such a case, the Preferred policy will apply to that part of the loss up to the policy limits in the declarations. Exhibit D.

Order. Courtesy copies of such supplemental briefing shall be delivered to the Chambers of United States Magistrate Judge Frances H. Stacy, 515 Rusk, Room 7727, Houston, Texas.

## VII. *Conclusion*

Based on the foregoing, the Court finds that an occurrence, as defined in the Preferred insurance policy and as interpreted by Texas law, means all loss caused by or involving, one or more employees, whether the result of a single act or series of acts. As such, the series of thefts over a three-year period by the Church's employee, Linda Smith, constitutes one occurrence. Furthermore, the Court finds that the Church may not stack its policy limits, even though the claim occurrence extends throughout several policy periods, because the three insurance policies cover three separate policy periods and do not overlap chronologically. Accordingly, the Church is entitled to receive from Preferred the $50,000 policy limit amount less the $31,123.89 already paid to the Church by Atlantic Mutual, or $18,876.11.

It is therefore,

ORDERED that Preferred Risk Mutual Insurance Company's Cross Motion for Summary Judgment (Document No. 19) is GRANTED, and that Bethany Christian Church's Motion for Summary Judgment (Document No. 16) is DENIED.