REVISED - June 14, 2001

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 00-11034**

_____

**RAN-NAN INC., doing business as Vinces Imports, doing
business as Guy's Drive In #3,**

Plaintiff-Appellee,

**versus**

**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,
also known as CGU Insurance Company,**

Defendant-Appellant.

_____

**Appeal from the United States District Court
for the Northern District of Texas**
_____

May 24, 2001

Before JONES, DeMOSS and BENAVIDES, Circuit Judges.

Per Curiam:

This contractual dispute arises from an "Employee Dishonesty Coverage" insurance policy issued by Appellant General Accident Insurance Company ("General Accident") to Appellee Ran-Nan, Inc. ("Ran-Nan"). The district court concluded that Ran-Nan was the victim of two separate "occurrences" of employee dishonesty and that General Accident had breached the insurance contract by refusing to compensate Ran-Nan for both incidents. Because the

district court properly interpreted the term "occurrence" under Texas law, we affirm.

Ran-Nan operates a convenience store in Plano, Texas, which includes a Western Union and check cashing business. Ran-Nan purchased Employee Dishonesty Coverage blanket insurance policies issued by General Accident. Each policy had a limit of $25,000 with a $500 deductible. The events in question occurred over the course of policies running from April 10, 1996 to April 10, 1997 (the fourth renewal policy) and from April 10, 1997 to April 10, 1998 (the fifth renewal policy).

Toward the end of 1997, Ran-Nan's owners became aware that the store was the victim of employee dishonesty and submitted a claim to General Accident. Two Ran-Nan employees, Robert Griffis and Angela Patillo, caused losses through entirely independent thefts. Robert Griffis stole a total of $32,250.00, and Angela Patillo stole a total of $31,600.00. The thefts occurred during both the fourth and fifth renewal periods in approximately proportionate amounts.

In response to Ran-Nan's claim, General Accident paid the policy limit less the deductible on the fifth renewal, but it refused to pay anything on the fourth renewal despite the fact that much of the theft had occurred during the earlier policy period. General Accident reasoned that there had only been one "occurrence" of employee dishonesty within the meaning of the policy.

2

Ran-Nan sued General Accident for breach of contract[1] and General Accident removed the case to federal district court on diversity grounds. The district court held that there were two separate "occurrences" of employee dishonesty and that Ran-Tan was entitled to recover for both. It therefore awarded Ran-Nan the amount due under the fourth renewal policy. General Accident now appeals.

### DISCUSSION

The interpretation of the word "occurrence" as used in the insurance contract is a question of law. See Rutgers State Univ. v. Martin Woodlands Gas Co., 974 F.2d 659, 661 (5th Cir. 1992). This court reviews questions of law *de novo*. See Empire Fire and Marine Ins. Co. v. Brantley Trucking Co., 220 F.3d 679 (5th Cir. 2000). In this diversity case governed by Texas law, an insurance contract is analyzed by the same rules as other contracts. Upshaw v. Trinity Cos., 842 S.W.2d 631, 633 (Tex. 1992). While "occurrence" has often been construed in general liability policies, there appear to be few cases interpreting the term in employee dishonesty policies.

The General Accident policy, like many similar policies, states that an "occurrence" is "all loss caused by, or involving,

---

[1]Ran-Nan also asserted a bad faith denial of coverage, but it has not cross-appealed the district court's adverse summary judgment on that claim.

3

one or more 'employees,' whether the result of a single act or series of acts."

In arguing that there was but one "occurrence" of employee dishonesty. General Accident urges that there was only one loss, specifically Ran-Nan's loss of a single sum of cash. The company also argues that the "involving one or more employees" clause of the "occurrence" definition means that regardless how many employees steal from the insured, there was only one loss of cash and therefore only one "occurrence." The more natural reading of the policy, however, is that the "involving" clause signifies that a group of employees conspiring together to steal.

General Accident invokes <u>Bethany Christian Church v. Preferred Risk Mutual Insurance Company</u>, 942 F.Supp. 330, 335 (S.D. Tex. 1996) (applying Texas law), in which a federal magistrate judge found that a church employee's series of thefts of cash over the course of three different renewal periods of an employee dishonesty insurance policy was a single "occurrence." The policies in <u>Bethany</u> and in this case contained identical definitions of "occurrence." We find this case distinguishable.

First, <u>Bethany</u> is critically different from this case because it involved a series of thefts by a single employee, whereas the present dispute involves independent pilfering schemes by two different employees working separately. To accept General Accident's proffered definition of "occurrence" this court would have to find that the independent nature of these two series of

4

thefts is irrelevant and that one loss with two unrelated causes is one "occurrence." The more natural reading of the policy, however, is that the "involving" clause signifies a group of employees conspiring together to steal is a single "occurrence."

Second, Texas law does not support the definition of "occurrence" proffered by General Accident because "the proper focus in interpreting 'occurrence' is on the events that cause the injuries and give rise to the insured's liability, rather than on the number of injurious effects." H.E. Butt Grocery Co. v. National Union Fire Insurance Co., 150 F.3d 526, 530 (5th Cir. 1998) (applying Texas law). The few Texas cases that have addressed this issue apply a "cause" analysis in determining whether a set of facts involves one or several occurrences. See Goose Creek Consol. ISD v. Continental Cas. Co., 658 S.W.2d 338, 339 (Tex. App. 1983--Houston [1st Dist.], no writ) (holding that "where there are two fires at two different places with two separate causal factors, there are two loss occurrences."). This "cause" approach to analyzing the number of "occurrences" is utilized by the great majority of courts and jurisdictions nationwide. See Transport Insurance Co. v. Lee Way Motor Freight, Inc., 487 F.Supp. 1325, 1330 (N.D. Tex. 1980) (cataloging law of other jurisdictions). This court has also utilized the "cause" method when determining the number of "occurrences" under a general liability insurance policy and Texas law. Maurice Pincoffs Co. v.

St. Paul Fire and Marine Insurance Co., 447 F.2d 204, 206 (5th Cir. 1971).

General Accident contends that decisions utilizing "cause" analysis such as H.E. Butt and Maurice Pincoffs are distinguishable as construing of general liability insurance policies instead of employee dishonesty insurance policies. Not only does the company neglect to cite any authority supporting this contention, but it also fails to explain why, in determining the number of "occurrences", employee dishonesty policies are different than general liability policies. It is true that no Texas case specifically applies "cause" analysis to employee dishonesty policies, but this widely accepted method for calculating the number of "occurrences" is consistent with the general principles of Texas law.

On the facts before us, two independent causes exist for Ran-Nan's total loss. Because there are two causes, there have been two "occurrences" of employee dishonesty. Ran-Nan is entitled to recover for both occurrences. The district court correctly concluded that Ran-Nan should be awarded $24,500 for the "occurrence" during the fourth renewal period of the policy in addition to the $24,500 already paid to Ran-Nan for the "occurrence" during the policy's fifth renewal period. The district court's judgment is therefore **AFFIRMED**.